**ANDERSON & KARRENBERG**
Jared D. Scott (#15066)
Jacob W. Nelson (#16527)
50 W. Broadway, Suite 600
Salt Lake City, UT 84101
Telephone: (801) 534-1700
jscott@aklawfirm.com
jnelson@aklawfirm.com

*Attorney for Plaintiffs*
*(additional counsel on signature page)*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARNELIUS ANDERSON, JUDY BAIRD, IRENE BURGESS, NANCY CAMPBELL, CASSANDRA CAVE, LUCILLE CLARK, JERI COVINGTON, DEANNA DORNAUS, HEATHER GILBERT, TAMIE HOLLINS, JACQUELINE HUSKEY, DEANNA JACKSON, CRYSTAL JOHNSON, JEANETTE JURGENSEN, NANCY KEBORT, KAREN LANGSTON, CATOYYA MORGAN, PATRICIA POWELL, NELISHA RODRIGUEZ, ALISA SIDBURY, DENISE SMILEY, and LESLIE ANN WILLIAMS *on behalf of themselves and all others similarly situated*, <br><br> *Plaintiffs*, <br><br> v. <br><br> PAPARAZZI, LLC, <br><br> *Defendant*. | **FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMANDED** <br><br> Case No. 2:22-cv-00439-DBB-PK <br><br> District Judge David Barlow <br> Magistrate Judge Paul Kohler |

Plaintiffs Carnelius Anderson, Judy Baird, Irene Burgess, Nancy Campbell, Cassandra Cave, Lucille Clark, Jeri Covington, Deanna Dornaus, Heather Gilbert, Tamie Hollins, Jacqueline Huskey, Deanna Jackson, Crystal Johnson, Jeanette Jurgensen, Nancy Kebort, Karen Langston, Catoyya Morgan, Patricia Powell, Nelisha Rodriguez, Alisa Sidbury, Denise Smiley, and Leslie Ann Williams (collectively, "Plaintiffs"), on behalf of themselves and the class of all others similarly situated as defined below, for their Consolidated Class Action Complaint against Paparazzi Accessories ("Paparazzi") for economic damages, allege as follows:

## **INTRODUCTION**

1.      Plaintiffs bring this class action on behalf of themselves, and a class of persons who purchased Paparazzi's necklaces, earrings, bracelets, and other accessories, which testing has revealed contain lead and nickel, in contradiction to Paparazzi's express claims that its Products were lead-free and nickel-free.

2.      Despite earlier representations and express warranties stating that Paparazzi Accessories' products are "lead-free and nickel-free," Paparazzi designed, sourced, and sold jewelry that allegedly contained detectable levels of lead and nickel, among other heavy metals (the "Products").[1]

3.      Defendant Paparazzi Accessories is a multi-level marketing business that advertises and sells jewelry and other accessories to consultants across the United States, who then sell the jewelry and other accessories to consumers.

---

[1] *Paparazzi Accessories Quietly Removes Lead and Nickel-Free Claim* (Feb. 16, 2022), https://truthinadvertising.org/articles/paparazzi-accessories-lead-free-and-nickel-free-jewelry/ (last accessed Apr. 28, 2022).

4.      A central tenet of Paparazzi's marketing and sales strategy during the relevant time period was to prominently promote its Products as lead- and nickel-free, as well as to encourage and control third parties (including but not limited to its consultants) to promote its Products as lead- and nickel-free.

5.      Paparazzi's marketing appeals were conspicuously saturated with its lead- and nickel-free claims:









  

6.      Marketing and advertising of the Products as lead- and nickel-free originated from and were encouraged and controlled by Paparazzi.

7.      Unbeknownst to Plaintiffs and members of the proposed Classes, and contrary to the representations on the Defendant's website, the Products contain lead and nickel, which, if disclosed to Plaintiffs and members of the proposed Classes prior to purchase, would have resulted in Plaintiffs and members of the proposed Classes not purchasing or using the Products.[2]

8.      Paparazzi made its "lead and nickel free" claims a central part of its marketing message to consumers in order to misleadingly create the impression that its Products are safer and of a higher level of quality than they are in reality.

9.      In late 2021 or early 2022, a group of Paparazzi customers began to conduct laboratory testing of the Products and discovered that Paparazzi's "lead and nickel free" claims were untrue. After reports of these tests results were made publicly available, and at some point between November 20, 2021 and January 9, 2022, Paparazzi stopped representing that its Products

---

[2] *Paparazzi Accessories Quietly Removes Lead and Nickel-Free Claim*, *supra* note 1; Awnya B., *Paparazzi jewelry IS Nickel and Lead Free*, https://jewelryblingthing.com/blogs/news/paparazzi-jewelry-is-nickel-and-lead-free (Dec. 21, 2021) (last accessed Apr. 22, 2022).

are lead- and nickel-free, removing the "lead-free and nickel-free" representations from their website.[3]

10.     Defendant's false statements, misrepresentations and material omissions about the presence of lead and nickel contained in its Products were intentionally made and were specifically designed to induce consumers to purchase its Products.

11.     As a direct result of Paparazzi's pervasive marketing campaign, customers including Plaintiffs and proposed Class members reasonably relied and continue to rely on Paparazzi's widespread express false statements, misleading representations and material omissions about the Products they purchased. They reasonably expected that Paparazzi's Products would be free of lead and nickel and, therefore, they mistakenly believed they would not be exposed to the adverse effects associated with these materials.

12.     The Products' labeling is deceptive and misleading. Plaintiffs and the members of the proposed Classes, as defined below, bring related claims under both the common law and relevant state and federal statutes.

## THE PARTIES

13.     **Plaintiff Carnelius Anderson** is a resident of the city of Bessemer in Jefferson County, **Alabama**. Between approximately 2016 and 2022, Plaintiff Anderson purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Anderson purchased were primarily metal or had a metal base. Plaintiff Anderson purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Anderson saw on their website. Plaintiff Anderson

---

[3] *Id.*

stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Anderson would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Anderson suffered economic damages related to the purchase of the Paparazzi Products.

14.    **Plaintiff Judy Baird** is a resident of the city of Lexington in Fayette County, **Kentucky**. At various points throughout 2021-2022, Plaintiff Baird purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Baird purchased were primarily metal or had a metal base. Plaintiff Baird Paparazzi purchased Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Baird saw on their website and on a Facebook Live session. Plaintiff Baird stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Baird would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Baird suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Baird also suffered from reactions to the lead and nickel in the Paparazzi Products, including rash, headaches and nausea.

15.    **Plaintiff Irene Burgess** is a resident of the city of Willows, **California**. Between September 2018 and May 2019, Plaintiff Burgess purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Burgess purchased were primarily metal or had a metal base.  Plaintiff Burgess purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Burgess heard from a Paparazzi consultant. Plaintiff Burgess stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Burgess

would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead.  Plaintiff Burgess suffered economic damages related to the purchase of the Paparazzi Products.

16.     **Plaintiff Nancy Campbell** is a resident of the city of Clearwater in Pinellas County, **Florida**. At various points throughout 2018-2022, Plaintiff Campbell purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Campbell purchased were primarily metal or had a metal base. Plaintiff Campbell purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Campbell saw on Paparazzi's websites and Facebook Live sessions. Plaintiff Campbell stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Campbell would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Campbell suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Campbell] also suffered from reactions to the lead and nickel in the Paparazzi Products, including skin discoloration and itching.

17.     **Plaintiff Cassandra Cave** is a resident of the city of Wichita in Sedgwick County, **Kansas**. At various points throughout 2018 Plaintiff Cave purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Cave purchased were primarily metal or had a metal base. Plaintiff Cave purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Cave saw a Facebook Live post. Plaintiff Cave stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Cave would not have purchased

the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Cave suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Cave also suffered from reactions to the lead and nickel in the Paparazzi Products, including swelling and an itchy rash.

18.    **Plaintiff Lucille Clark** is a resident of the city of Syracuse in Onondaga County, **New York**. At various points between 2016 and 2018, Plaintiff Clark purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Clark purchased were primarily metal or had a metal base. Plaintiff Clark purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Clark saw displayed on the Paparazzi Website. Plaintiff Clark stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Clark would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Clark suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Clark also suffered from reactions to the lead and nickel in the Paparazzi Products, including infected ears where the Paparazzi Products were worn.

19.    **Plaintiff Jeri Covington** is a resident of the city of Florissant in St. Louis County, **Missouri**. At various points between 2018 and 2019, Plaintiff Covington purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Covington purchased were primarily metal or had a metal base. Plaintiff Covington purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Covington saw displayed at in-person Pop Up events and as communicated by Paparazzi consultants. Plaintiff Covington stopped purchasing Paparazzi

Products when she learned they were not lead and/or nickel free.  Plaintiff Covington would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Covington suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Covington also suffered from reactions to the lead and nickel in the Paparazzi Products, including rashes where Paparazzi Products were worn and low iron levels.

20.     **Plaintiff Deanna Dornaus** is a resident of Crescent City in Del Norte County, **California**. At various points throughout 2019 Plaintiff Dornaus purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Dornaus purchased were primarily metal or had a metal base.  Plaintiff Dornaus purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Dornaus heard from a Paparazzi consultant. Plaintiff Dornaus stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Dornaus would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead.  Plaintiff Dornaus suffered economic damages related to the purchase of the Paparazzi Products.

21.     **Plaintiff Heather Gilbert** is a resident of the city of Owosso, in Shiawassee County, **Michigan**. Beginning in or around 2018 and continuing until approximately 2020, Plaintiff Gilbert purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Gilbert purchased were primarily metal or had a metal base. Plaintiff Gilbert purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Gilbert saw Paparazzi's website. Plaintiff Gilbert stopped purchasing Paparazzi Products when she learned they were not

lead and/or nickel free.  Plaintiff Gilbert would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Gilbert suffered economic damages related to the purchase of the Paparazzi Products.

22.    **Plaintiff Tamie Hollins** is a resident of the city of Newburgh in Orange County, **New York**. At various points throughout 2021, Plaintiff Hollins purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Hollins purchased were primarily metal or had a metal base. Plaintiff Hollins purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Hollins saw displayed on the Paparazzi website and that were communicated by Paparazzi consultants on Facebook Live events. Plaintiff Hollins stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Hollins would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Hollins suffered economic damages related to the purchase of the Paparazzi Products.

23.    **Plaintiff Jacqueline Huskey** is a resident of the city of Matteson in Cook County, **Illinois**. At various points throughout 2021-2022, Plaintiff Huskey purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Huskey purchased were primarily metal or had a metal base. Plaintiff Huskey purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Huskey heard from the consultant. Plaintiff Huskey stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Huskey would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Huskey suffered economic damages related to the purchase of the

Paparazzi Products. Plaintiff Huskey also suffered from reactions to the lead and nickel in the Paparazzi Products, including itchy, dark skin and a rash.

24.    **Plaintiff Deanna Jackson** is a resident and citizen of the city of Corona, **California**. At various points throughout 2018-2019 Plaintiff Jackson purchased Paparazzi Products for personal use. The Paparazzi Products Plaintiff Jackson purchased were primarily metal or had a metal base. Plaintiff Jackson purchased Paparazzi Products because the Products were advertised as being lead-free and nickel-free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Jackson heard from a Paparazzi consultant. Plaintiff Jackson stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Jackson would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Jackson suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Jackson has a nickel allergy and experienced skin itching, redness, and discoloration at the site where she wore the jewelry.

25.    **Plaintiff Crystal Johnson** is a resident of the city of Fayetteville in Cumberland County, **North Carolina**. From approximately 2013 until early 2022, Plaintiff Crystal Johnson purchased Paparazzi's Products for personal purposes. The Products Plaintiff Johnson purchased were primarily made of metal or had a metal base. Plaintiff Johnson purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Johnson saw on Paparazzi's consultants' social media, consultants' personal websites for selling Paparazzi Products, and online demonstrations and/or jewelry shows. Plaintiff Johnson stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Johnson would not have purchased the Paparazzi

Products if she had known that they contained nickel and/or lead. Plaintiff Johnson suffered economic damages related to the purchase of the Paparazzi Products.

26.    **Plaintiff Jeanette Jurgensen** is a resident of the city of Edgewood in Pierce County, **Washington**. At various points prior to 2021. Plaintiff Jurgensen purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Jurgensen purchased were primarily metal or had a metal base. Plaintiff Jurgensen purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations that the Products were free of lead and/or nickel. Plaintiff Jurgensen stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Jurgensen would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Jurgensen suffered economic damages related to the purchase of the Paparazzi Products.

27.    **Plaintiff Nancy Kebort** is a resident of the city of Fayetteville in Cumberland County, **North Carolina**. From approximately 2020 through early 2022, Plaintiff Kebort purchased Paparazzi's Products for personal purposes. The Products Plaintiff Kebort purchased were primarily made of metal or had a metal base. Plaintiff Kebort purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Kebort saw on Paparazzi's consultants' social media, consultants' personal websites for selling Paparazzi Products, and online demonstrations and/or jewelry shows. Plaintiff Kebort stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Johnson would not have purchased the Paparazzi

Products if she had known that they contained nickel and/or lead. Plaintiff Johnson suffered economic damages related to the purchase of the Paparazzi Products.

28.     **Plaintiff Karen Langston** is a resident of the city of Fayetteville in Cumberland County, **North Carolina**. For approximately five years, ending in early 2022, Plaintiff Langston purchased Paparazzi's Products for personal purposes. The Products Plaintiff Langston purchased were primarily made of metal or had a metal base. Plaintiff Langston purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Langston saw on Paparazzi's consultants' social media, consultants' personal websites for selling Paparazzi Products, and online demonstrations and/or jewelry shows. Plaintiff Langston stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Langston would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Langston suffered economic damages related to the purchase of the Paparazzi Products.

29.     **Plaintiff Catoyya Morgan** is a resident of the city of Clifton in St. Lawrence County, **New Jersey**. At various points between 2013 and 2020, Plaintiff Morgan purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Morgan purchased were primarily metal or had a metal base. Plaintiff Morgan purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Morgan saw displayed on signs at Paparazzi's in-person sales events. Plaintiff Morgan stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Morgan would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Morgan suffered

economic damages related to the purchase of the Paparazzi Products. Plaintiff Morgan also suffered from reactions to the lead and nickel in the Paparazzi Products, including irritation around the ear where Paparazzi Products were worn.

30.    **Plaintiff Patricia Powell** is a resident of the city of Locus Grove in Henry County, **Georgia**. At various points throughout 2018-2020, Plaintiff Powell purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Powell purchased were primarily metal or had a metal base. Plaintiff Powell purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Powell heard from a Paparazzi consultant. Plaintiff Powell stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Powell would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Powell suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Powell also suffered from reactions to the lead and nickel in the Paparazzi Products, including skin discoloration and rashes.

31.    **Plaintiff Nelisha Rodriguez** is a resident and citizen of California residing in Long Beach, **California**. Between January and September 2021, Plaintiff Rodriguez purchased Paparazzi Products for personal use. The Paparazzi Products Plaintiff Rodriguez purchased were primarily metal or had a metal base. Plaintiff Rodriguez purchased Paparazzi Products because the Products were advertised as being lead-free and nickel-free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Rodriguez heard from a consultant. Plaintiff Rodriguez stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free. Plaintiff Rodriguez would not have purchased the Paparazzi Products if she had

known that they contained nickel and/or lead. Plaintiff Rodriguez has a nickel allergy and experienced skin rashes at the site where she wore the jewelry. Plaintiff Rodriguez suffered economic damages related to the purchase of the Paparazzi Products.

32.    **Plaintiff Alisa Sidbury** is a resident of the city of Virginia Beach in Fairfax County, **Virginia**. At various points throughout 2021 Plaintiff Sidbury purchased Paparazzi Products for personal purposes. The Paparazzi Products Plaintiff Sidbury purchased were primarily metal or had a metal base. Plaintiff Sidbury purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Sidbury saw on flyers and posters on display at Paparazzi Consultant in-person live events. Plaintiff Sidbury stopped purchasing Paparazzi Products before she learned they were not lead and/or nickel free.  Plaintiff Sidbury would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Sidbury suffered economic damages related to the purchase of the Paparazzi Products.

33.    **Plaintiff Denise Smiley** is a resident of the city of Rialto in San Bernadino County, **California**. At various points throughout 2019 Plaintiff Smiley purchased Paparazzi Products for personal purposes. The Paparazzi Products plaintiff Smiley purchased were primarily metal or had a metal base. Plaintiff Smiley purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Smiley saw in an email. Plaintiff Smiley stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Smiley would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Smiley suffered economic damages related to the purchase of the Paparazzi Products. Plaintiff Smiley also

suffered from reactions to the lead and nickel in the Paparazzi Products, including breaking out in an itchy rash around her neck.

34.    **Plaintiff Leslie Ann Williams** is a resident of the city of Fayetteville in Cumberland County, **North Carolina**. For approximately four years, ending in 2022, Plaintiff Williams purchased Paparazzi's Products for personal purposes. The Products Plaintiff Williams purchased were primarily made of metal or had a metal base. Plaintiff Williams purchased Paparazzi Products because they were advertised as being lead and nickel free. Plaintiff believed and reasonably relied on Paparazzi's representations, which Plaintiff Williams saw on Paparazzi's consultants' social media, consultants' personal websites for selling Paparazzi Products, and online demonstrations and/or jewelry shows. Plaintiff Williams stopped purchasing Paparazzi Products when she learned they were not lead and/or nickel free.  Plaintiff Williams would not have purchased the Paparazzi Products if she had known that they contained nickel and/or lead. Plaintiff Williams suffered economic damages related to the purchase of the Paparazzi Products.

35.    **Defendant Paparazzi Accessories** is a corporation headquartered in **Utah**. Paparazzi's principal place of business is 4771 Desert Color Pkwy, St. George, UT 84790.

## JURISDICTION & VENUE

36.    *Subject Matter Jurisdiction*. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

37.    *Personal Jurisdiction*. Each of the transferor courts has personal jurisdiction over Paparazzi because Paparazzi regularly conducts business in those states (including in Utah) and because Paparazzi has falsely advertised the product to consumers who reside in those states (including in Utah). Paparazzi has also sold its products in states across the country (including in Utah). In addition, Paparazzi committed tortious acts in the transferor states (including in Utah), and Plaintiffs' claims arise out of such acts, and/or because Paparazzi has otherwise made or established contacts in the transferor states (including in Utah) sufficient to permit the exercise of personal jurisdiction.

38.    *Venue*. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events giving rise to the claims asserted occurred in this District and at least one Plaintiff resides in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## FACTUAL ALLEGATIONS

### A.    *Background*

39.    Paparazzi Accessories is a company that designs, formulates, manufactures, sources, markets, advertises, distributes, and sells women's and men's Products and, until about February 2022, children's Products.

40.    Paparazzi's business model is what is widely known as a multi-level marketing business, in which Paparazzi recruits salespersons, which it calls consultants, to market and sell its

Products to consumers for a commission. Paparazzi also claims its salespersons can earn large commissions and bonuses for recruiting other individuals to be Paparazzi salespersons.

41.     Paparazzi is the sole source of information concerning the Products, including the Products' qualities and composition.

42.     Consistent with the multi-level marketing business model, the information in



Paparazzi's marketing and outreach to consumers is provided entirely through its website, its social media presence, and through the information Paparazzi provides to its consultants.

43.     Paparazzi holds itself out to the public as a distributor of safe, fashion-forward, and affordable jewelry.

**B.     _Defendant Marketed and Sold Its Jewelry as "Lead-free and Nickel-free"_**

44.     Until about December 2021, Paparazzi engaged in a pervasive marketing campaign that had a prominent and consistent message: Paparazzi sells inexpensive jewelry that is lead and nickel free.

45.    As part of its previous marketing and sales, Paparazzi made representations and express warranties about the quality of its jewelry as "lead-free and nickel-free."

46.    For example, Paparazzi expressly and conspicuously touted that all of its Products were lead and nickel free on its website[4]:



47.    Paparazzi promoted the Products as "lead-free and nickel-free" jewelry on their website as recently as November 9, 2021.[5]

48.    Additionally, Paparazzi's consultants, who were responsible for disseminating Paparazzi's marketing, repeated Paparazzi's lead and nickel-free claim in online and during in-person sales sessions, often at the beginning and then repeating these claims throughout the sales session.

49.    Similarly, these consultants saturated their marketing appeals on their other social media accounts and websites with the claim that Paparazzi's Products were lead and nickel free.

---

[4] http://web.archive.org/web/20161024002621/https://paparazziaccessories.com/about/
[5] https://web.archive.org/web/20211006014220/https://paparazziaccessories.com/about/

50.     As described in more detail below, consultants' repeated use of Paparazzi's lead and nickel free claim was a result of the brand identity created by Paparazzi, as well as its direction and encouragement to employ the "lead and nickel free" claim.

51.     Paparazzi scrubbed its website of its express claims that its Products are lead and nickel free on or about December 2021 or early 2022, just after reports began circulating online that Paparazzi's Products indeed contain lead and nickel.[6]



52.     In an effort to allay customers' concerns about the adverse effects they may suffer from wearing its Products and mitigate the harm to its sales and reputation, Paparazzi **now** represents that "some [of its] jewelry **may contain trace amounts of lead and nickel**" and that "[t]he metals found in Paparazzi jewelry pieces are primarily made of iron and include other trace minerals. Those trace minerals are made up of a metallic alloy of either zinc, steel, or aluminum."[7]

---

[6] https://web.archive.org/web/20220109184940/https://paparazziaccessories.com/about/
[7] https://mailchi.mp/paparazziaccessories/a-holiday-gift-for-you-1383107?e=6c95b6359f (Last accessed March 23, 2022) (Emphasis added).

**C.    _Paparazzi Trains and Incentivizes Salespersons to Repeat its "Lead and Nickel Free" Marketing Claims_**

       i.    _Paparazzi's Direction and Control of Consultants' Marketing and Sales Practices_

53.    Paparazzi directs, controls, and has the authority to control, all Paparazzi-brand marketing, which includes its consultants' marketing (which repeats Paparazzi's own marketing claims).

54.    From the very beginning, Paparazzi emphasized to its consultants that the lead and nickel-free nature of the Products was a key characteristic and selling point.

55.    For example, after signing a contract with Paparazzi, consultants must purchase a "Welcome Package." The Welcome Package contains a training brochure authored by Paparazzi to educate consultants on how to sell the Products.

56.    The training brochure includes a section entitled "Quick Facts," which prominently states that "Paparazzi products are: Lead-free and nickel-free":



57.     Paparazzi's purpose in providing the training brochure in general, and the "Quick Facts" section specifically, is to ensure that consultants repeat Paparazzi-approved marketing claims about the Products.

58.     Paparazzi requires that consultants repeat such claims; it does not simply hope that the consultants repeat Paparazzi-approved marketing claims.

59.     Every Paparazzi consultant is governed by a formal policies and procedures document. *See* 4:22-cv-00035-DN-PK, D.E. 67-1 ("Policies and Procedures").[8]

60.     Paparazzi explains that the purpose of its Policies and Procedures document is "to clearly articulate the expected behavior and acceptable business conduct of all parties involved." (D.E. 67-1 at ¶ 2.2; *see also* ¶ 2.1 ("Consultant shall take general direction from Paparazzi and abide by the policies and procedures set forth herein.")) One such expected behavior is "to comply with [the Policies and Procedures] and its components…" (D.E. 67-1 at ¶ 2.2).

61.     As a consultant, Paparazzi provides a number of "benefits," including "the ability to hold house parties, larger parties, or promote larger shows under the Paparazzi name…" and "[t]he ability to receive Paparazzi training and communication…" (D.E. 67-1 at ¶ 3.4(c), (f)).

62.     However, the "benefits" offered by Paparazzi also come with expectations. In its Policies and Procedures, Paparazzi mandates: "***Consultants must adhere to all published Paparazzi Marketing and Compensation Plan literature. Paparazzi Consultants may not offer Paparazzi products or opportunity in conjunction with any other system, program, or method of***

---

[8] Paparazzi co-founder Ryan Reeve confirms that the Policies and Procedures are mandatory for every consultant. (D.E. 67-1 at ¶¶ 7, 22).

***marketing other than that which is set forth in the published Paparazzi Marketing literature.***"
(D.E. 67-1 at ¶ 5.1) (emphasis added); (*see also* D.E. 67-1 at ¶ 3.7(a)).

63.    In fact, Paparazzi so zealously governs how its consultants market the Products that Paparazzi institutes a pre-marketing review requirement: "Any personalized promotional material or advertising attempt must be approved by Paparazzi and its legal department to ensure that there are no claims or violations to the Paparazzi trademark, namesake, or other legal issues." (D.E. 67-1 at ¶ 5.2). In order to further ensure that its consultants adhere to Paparazzi's marketing, consultants are required to indemnify "Paparazzi and Paparazzi's directors, officers, agents, and employees and hold them harmless from any liability…as a result of the Consultant's unauthorized representations or actions." (D.E. 67-1 at ¶ 4.10).

64.    The Paparazzi Marketing literature includes the training brochure and specifically Paparazzi's marketing claims that the Products are lead and nickel free.

65.    Paparazzi monitors consultants' marketing and sales practices and suspends or terminates consultants who violate Paparazzi's Policies and Procedures, including its marketing guidelines.

### ii.    *Paparazzi's Business Model Ensures Marketing Plan is Followed*

66.    In addition to its Policies and Procedures, Paparazzi's business structure ensures that its lead and nickel-free marketing communication strategy is adopted and followed by its consultants.

67.    Paparazzi's business model, like other multi-level marketers, is founded on a recruit-and-sell strategy whereby a consultant who recruits other consultants will receive a portion of the recruited-consultant's sales revenue. The more one consultant recruits others, who in turn

are encouraged to recruit others, the higher the original consultant's revenue will theoretically increase.



68.    The pyramid of positions starts with the position "consultant" and continues as follows: star consultant, director, premier director, executive director, producer, premier producer, executive producer, fashionista, a-lister, maven a-lister, jetsetter, luxe jetsetter, and impressionista. As a person recruits more individuals below them, who recruit more individuals below them, and so on, the higher the person's income potential.

69.    As a result, consultants are encouraged to, and do, develop "teams" of other consultants. Consultants who develop a team are able to and do communicate marketing strategies and claims, which must be consistent with Paparazzi's own marketing.

70.    Paparazzi provides bonuses based on consultants' commission earnings, which Paparazzi represents on its income disclosure form as follows:

| Bonus Rank | Percent of Consultants Earning Commissions Monthly | Highest Monthly Bonus Paid | Lowest Monthly Bonus Paid | Average Monthly Bonus Paid |
|---|---|---|---|---|
| Consultant | 4.39% | $99.00 | $0.10 | $12.38 |
| Star Consultant | 69.92% | $1,736.00 | $0.10 | $23.90 |
| Director | 18.57% | $10,134.30 | $2.25 | $186.63 |
| Premier Director | 2.88% | $18,392.40 | $174.80 | $587.33 |
| Executive Director | 1.87% | $14,878.46 | $380.06 | $989.99 |
| Producer | 1.14% | $26,911.86 | $925.60 | $2,002.65 |
| Premier Producer | 0.43% | $14,428.00 | $1,402.48 | $3,164.39 |
| Executive Producer | 0.39% | $20,935.34 | $2,164.10 | $5,066.19 |
| Fashionista | 0.20% | $41,350.57 | $4,025.40 | $9,761.86 |
| A-Lister | 0.07% | $59,236.84 | $8,293.84 | $16,219.80 |
| Maven A-Lister | 0.06% | $54,658.06 | $15,620.12 | $28,136.54 |
| Jetsetter | 0.05% | $237,151.40 | $24,471.68 | $71,918.53 |
| Luxe Jetsetter & Above | 0.01% | $237,235.54 | $103,391.23 | $161,390.29 |

71.     The Products' marketing: by controlling how consultants are educated, requiring consultants to repeat Paparazzi's marketing messages, showcasing top consultants and their marketing strategies, and by structuring their business so that hierarchical "teams" develop with consistent marketing claims.

**D.     _Independent Testing Results Reveal Paparazzi's Products Contain Lead and Nickel._**

72.     In or about December 2021, former Paparazzi consultants grew to be suspicious of Paparazzi's claims that the Products were lead and nickel free. These consultants believed that the Products may contain lead and nickel despite Paparazzi's consistent representations to the contrary.

73.     These former Paparazzi consultants commissioned a third-party testing facility, Waypoint Analytical, to lab test (10) pieces of metallic jewelry manufactured and distributed by Paparazzi to determine their composition.

74.     The results of the lab testing arranged by these former consultants was released on or around January 2022, and confirmed that each piece of Paparazzi jewelry that was tested contained either lead or nickel, or both, along with other materials known to be hazardous, including arsenic and cadmium.[9]

75.     In addition, Plaintiffs sought and obtained confirmatory, independent third-party testing to determine whether Paparazzi's Products contained lead and/or nickel.

76.     Plaintiffs' independent testing was conducted in accordance with accepted industry standards for detecting whether jewelry products contain lead or nickel.

77.     Here, Plaintiffs' testing revealed that every Paparazzi Product tested contained significant amounts of lead or nickel, or both, that exceed trace levels.

**E.     _Defendant's False Statements and Misrepresentations are Material_**

78.     Unbeknownst to Plaintiffs and members of the proposed Classes, and contrary to the representations on the Defendant's website, the Products contain toxic heavy metals such as antimony, arsenic, cadmium, lead and nickel,[10] which, if disclosed to Plaintiffs and members of

---

[9] A summary of the results can be found here. https://medium.com/@murialbezanson/paparazzi-jewelry-tests-positive-for-lead-and-nickel-877c2254a47d

[10] _See Paparazzi Jewelry Tests Positive for Lead and Nickel_, https://medium.com/@murialbezanson/paparazzi-jewelry-tests-positive-for-lead-and-nickel-877c2254a47d (last accessed Apr. 22, 2022); _Paparazzi Accessories Child's Ring_, https://tamararubin.com/2022/02/paparazzi-accessories-childs-ring-pink-white-flower-with-center-gem-252800-ppm-lead-98200-ppm-cadmium-4565-ppm-antimony-40500-ppm-nickel-too/ (last accessed Apr. 22, 2022).

the proposed Classes prior to purchase, would have caused Plaintiffs and members of the proposed Classes not to purchase or use the Products.[11]

79.    Paparazzi's representations that its Products were lead and nickel free are material because they would likely affect consumers' decision to purchase these products and did in fact affect Plaintiffs' and proposed Class Members' purchase decisions.

80.    Lead used in jewelry makes the product heavier, more stable, brightens the paint, or softens the plastic. However, lead is a toxic metal that has been demonstrated to lead to severe long-term health problems including, *inter alia*, learning disabilities, anemia, and organ failure. Lead is a carcinogen and developmental toxin known to cause severe health problems to consumers.

81.    Studies have shown that lead can be absorbed through the skin.[12]

82.    Moreover, nickel is a known allergen that can cause reactions in wearers such as itchy rashes and blisters at the site of contact with skin. Reactions can begin within hours or days of the exposure to nickel and may last as long as two to four weeks. [13]

83.    Studies have shown that roughly 12 to 17% of women and 1 to 3% of men are allergic to nickel.[14]

---

[11] *Paparazzi Accessories Quietly Removes Lead and Nickel-Free Claim*, *supra* note 1.

[12] *See Lead*, NIOSH (Dec. 12, 2021), https://www.cdc.gov/niosh/topics/lead/exposure.html, (last accessed Apr. 22, 2022).

[13] *Nickel allergy*, Mayo Clinic (Aug. 3, 2021), https://www.mayoclinic.org/diseases-conditions/nickel-allergy/symptoms-causes/syc-20351529 (last accessed Apr. 22, 2022)

[14] Stefanos F. Haddad et al., *Exploring the Incidence, Implications, and Relevance of Metal Allergy to Orthopaedic Surgeons* (Apr. 5, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6510463/ (last accessed Apr. 22, 2022); *What do you need to know about nickel allergy?,* Nickel Inst., https://nickelinstitute.org/en/science/what-do-you-need-to-know-about-nickel-allergy/ (last accessed Apr. 22, 2022).

84.    Nickel allergies often causing itchy, inflamed rashes, hives, and sometimes headaches, vomiting, and fatigue.[15]

85.    Consumers lack the ability to ascertain the true contents of Paparazzi's Products prior to purchase. Accordingly, reasonable consumers must and do rely on Paparazzi to accurately and honestly disclose the materials in its Products. This is especially true for materials such as lead and nickel.

86.    In particular, Paparazzi knows that wearing accessories containing nickel is undesirable to many consumers because these materials can trigger adverse effects, such as allergic reactions and skin discoloration. Consumers also seek to avoid purchasing jewelry containing lead due to the toxic nature of the metal.

87.    Defendant's statements and omissions are especially material to parents and other customers who purchased Paparazzi's children's line of products, marketed as the Starlet Shimmer collection. The Starlet Shimmer collection was designed and marketed by Paparazzi to appeal to young children.

---

[15]    *Nickel Allergy*, Cleveland Clinic (July 4, 2018), https://my.clevelandclinic.org/health/diseases/17 842-nickel-allergy (last accessed Apr. 28, 2022).




88.     Children who wore Paparazzi's Starlet Shimmer Products were unnecessarily put at risk of suffering the above-described adverse effects, as well as serious risk to their health. Nickel and lead pose a greater harm to children, who are known to put Products in their mouths, chew or swallow these materials.

89.     Defendant's express representations that its Products were free from lead and nickel are important to reasonable consumers, such as Plaintiffs and Class Members, when purchasing the Products.

90.     Defendant conceals, suppresses, or omits that its Products contain lead and nickel. These facts are material because Defendant knows, or should know, that consumers, including Plaintiffs and proposed Class Members, rely on this information to evaluate the product.

91.     As a direct and proximate result of Defendant's advertising, marketing, and public statements, consumers, including Plaintiffs, purchased Paparazzi's Products for their personal use.

92.     Consumers pay the premium prices that they do—and Plaintiffs paid the price they did—because they reasonably believe that Paparazzi's Products are free of lead and nickel and will not contain these materials, as represented by Paparazzi.

93.     As alleged herein, Plaintiffs and proposed Class Members received something worth less than what they paid for and did not receive the benefit of their bargain. They paid for the Products, which were supposed to be free of lead and nickel, but did not receive such Products.

94.     Defendant knew or should have known of that its Products contained lead and nickel and have undertaken a deliberate and willful pattern of conduct, including taking affirmative measures, aimed at deceiving consumers, including Plaintiffs and proposed Class Members, into believing that the Products are free of these materials which are shown to cause adverse effects and are of a lesser quality than other materials used to make jewelry.

95.     At all relevant times, Defendant knew the true nature of the materials contained in the Products, but nevertheless marketed, advertised and sold the Products without disclosing this material information in an effort to persuade consumers that they were, in fact, buying Products that were free of lead and nickel in order to profit.

96.     No reasonable consumer would expect that a product marketed as free of lead and nickel would contain these materials.

97.     As a direct and proximate result of Defendant's concealment of the presence of lead, nickel and its deceptive representations, Plaintiffs and other similarly situated consumers purchased and used the Products.

98.     Plaintiffs and all proposed Class Members purchased the Products which contained the same materials at the point of sale to the public.

99.     Paparazzi's false statements and misrepresentations are intentional, or otherwise entirely careless, and render its Products worthless or less valuable. If Defendant had disclosed to Plaintiffs and proposed Class Members that its Products contained lead and nickel, Plaintiffs and Class members would not have purchased the Products. Each of these representations are important to reasonable consumers, such as Plaintiffs and proposed Class Members, when purchasing the Products.

100.    Plaintiffs and all proposed Class Members purchased the Products which contained lead and nickel at the point of sale to the public.

101.    Plaintiffs and each of the proposed Class Members have been damaged and suffered an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and such other and further relief as this Court deems just and proper.

102.    Prior to filing suit, Plaintiffs' counsel sent notice via Certified U.S. Mail to Defendant on behalf of certain Plaintiffs and others who purchased the Products, and put Paparazzi on notice that, contrary to its marketing, the Products contain lead and nickel. Counsel for Paparazzi acknowledged receipt.

*F.*    *Defendant's Knowledge*

103.    In a statement attributed to Paparazzi's founders and corporate offices dated December 22, 2021, Paparazzi admitted its jewelry "may contain trace amounts of lead and nickel."[16]

104.    Defendant knows what materials are in its Products. In addition to testing its Products, Paparazzi's founders boast that they engage in "hands-on leadership" of the company, and that they "individually design and source materials for Paparazzi products while working directly with manufacturing partners."

105.    Defendant is aware that many people shy away from purchasing low-cost jewelry, commonly referred to as costume jewelry, because they develop rashes, bumps or discolored skin after wearing such products. In particular, Defendant, in its position as a designer, importer, and seller, knows that nickel is widely known to cause such adverse effects.

106.    Moreover, Defendant's representations and the facts Defendant conceal, suppress or omit about the contents of its Products are material because Defendant knows that its Products contain lead and nickel in amounts far greater than what is considered to be trace amounts of these materials.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

107.    Defendant has actual knowledge that its Products contain lead and nickel.

---

[16] *Paparazzi jewelry IS Nickel and Lead Free*, *supra* note 4.

108.    Defendant also had actual knowledge that the marketing, packaging, and labeling of the Products was deceptive and misleading because the Products undergo regular testing for all heavy metals including lead, nickel, and cadmium.[17]

109.    Although Defendant was aware of the deception in its marketing, advertising, and sale of the Products, given the inclusion of lead and nickel in its Products, Paparazzi failed to disclose to Plaintiffs or proposed Class Members the lead and nickel contained in its Products.

A.    *Continuing Act Tolling*

110.    Defendant continuously marketed and sold the Products to consumers. It continuously represented the Products were "lead-free and nickel-free." By continuously repeating these false representations and by failing to disclose that the Products did in fact contain nickel, lead, and other heavy metals, Defendant exposed consumers to risk of injury.

111.    Defendant's knowledge of the true inherent nature of the Products is evidenced by, among other things, statements made by consultants.[18]

112.    Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Products and false marketing of the Products, yet it knowingly continued to aggressively market and sell the Products free of nickel and lead. Plaintiffs and other Class members' claims are not time barred.

---

[17] *Id.*
[18] *Id.*

### B.    *Fraudulent Concealment Tolling*

113.    Defendant had a duty to disclose to Plaintiffs, Nationwide Class Members, and State Class Members the true quality and nature of the Products, that they were potentially unsafe, and actually contained nickel and lead.

114.    This duty arose, among other things, due to Defendant's overt representations that the Products did not contain nickel or lead.

115.    Defendant has known at all relevant times of the risks that the Products contained nickel and lead. Prior to selling the Products, Defendant knew or, but for its extreme recklessness, should have known that the Products actually contained nickel and lead and thus posed a risk to consumers. These facts cannot have been unknown to Defendant in the absence of extreme recklessness.

116.    Despite its knowledge of the defective design and danger of the Products when used as intended, Defendant failed to disclose and actively concealed this material information.

117.    The purpose of Defendant's active concealment of the dangers of the Products was to continue to profit from the sale of the Products and to prevent Plaintiff and other Class members from seeking redress.

118.    Plaintiffs and the other Class members justifiably relied on Defendant to disclose the true nature of the Products they purchased and/or owned because the truth was not discoverable by Plaintiff and the other Class members through reasonable efforts.

119.    Any applicable statute of limitations is tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### C.     *Discovery Rule Tolling*

120.     Plaintiffs and other Class members, through the exercise of reasonable diligence, could not have discovered Defendant's wrongdoing. Defendant was concealing and misrepresenting the true nature of the Products, including the fact that they actually contain nickel and lead.

121.     Until recently, only Defendant had knowledge of the fact that the Products pose a safety risk to consumers. Plaintiff, Class Members, and the public at-large had no reasonable way of obtaining knowledge of this important fact until certain consumers began testing the Products for themselves. Such testing is not widely available.

122.     Plaintiffs and Class Members could not have reasonably discovered the true extent of Defendant's illegal conduct in connection with the ingredients of the Products until certain consumer began testing and posting articles regarding the results on widespread forums.

123.     Plaintiffs and other Class members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect, that Defendant knowingly failed to disclose material information within its knowledge about the contents and dangers of the Products to consumers in the U.S. and elsewhere.

124.     As such, no potentially relevant statute of limitations should be applied.

### D.     *Estoppel*

125.     Defendant was under a continuous duty to disclose to Plaintiffs and other Class members the fact they knew that the Products actually contained nickel, lead, and other heavy metals.

126.    Defendant knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Products from Plaintiff and other members of the Class.

127.    Thus, Defendant is estopped from relying on any statutes of limitations in defense of this action.

### FED. R. CIV. P. 9(b) ALLEGATIONS

128.    Although Defendant is in the best position to know what content it placed on its website(s), social media sites, and in marketing materials during the relevant timeframe, and the knowledge it had regarding the lead and nickel and its failure to disclose the existence of lead and nickel in its Products to Plaintiffs and consumers, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

    a. **WHO**: Defendant made false statements and material misrepresentations and/or omissions of fact on its website(s), marketing materials and in public statements, which include express and/or implicit representations that its Products were and are free of lead and nickel.

    b. **WHAT**: Defendant falsely and misleadingly represented that its Products were and are free of lead and nickel and failed to disclose that the Products contain these materials. Thus, Defendant's conduct deceived Plaintiffs and proposed Class Members into believing that the Products were manufactured and sold with such qualities. Defendant knew or should have known this information is material to reasonable consumers, including Plaintiffs and proposed Class Members in making their purchasing decisions, yet it continued to pervasively market the Products as possessing qualities they do not.

c. **WHEN**: Defendant made material misrepresentations, false statements and/or omissions during the proposed Class and at the time Plaintiffs and proposed Class Members purchased the Products, prior to and at the time Plaintiffs and proposed Class Members made claims after realizing the Products contained lead and nickel and continuously throughout the applicable Class period.

d. **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on its website(s), marketing materials and in public comments.

e. **HOW**: Defendant made material misrepresentations, false statements and/or omissions regarding the presence of lead and nickel in its Products by making express and/or implicit representations in various marketing materials that its Products were free of lead and nickel and by omitting any facts in its marketing and/or other descriptions of its Products that would inform a consumer as to the presence of lead and nickel.

f. **WHY**: Defendant made the material misrepresentations, false statements, and/or omissions detailed herein for the express purpose of inducing Plaintiffs, proposed Class Members, and all other reasonable consumers to purchase and/or pay for the Products instead of other brands that did not make similar representations, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

g. **INJURY**: Plaintiffs and proposed Class Members did not receive the benefit of their bargain. They purchased, paid a premium, or otherwise paid more for the

Products when they otherwise would not have, absent Defendant's misrepresentations, false statements and/or omissions.

## CLASS ACTION ALLEGATIONS

129.    Plaintiffs seek certification of a Nationwide Class and State Classes for the fullest period allowed by law (the "Relevant Time Period").

130.    All named Plaintiffs seek certification on behalf of a nationwide class defined as follows (the "Nationwide Class"):

> **Nationwide Class:** All persons who purchased Paparazzi Products in the United States within the Relevant Time Period.

131.    In addition to the Nationwide Class, Plaintiffs seek certification of State Classes.

132.    Plaintiff Anderson seeks certification on behalf of a class defined as follows (the "Alabama Class"):

> **Alabama Class**: All persons who purchased Paparazzi Products in the State of Alabama within the Relevant Time Period.

133.    Plaintiffs Burgess, Dornaus, Jackson, Rodriguez, and Smiley seek certification on behalf of a class defined as follows (the "California Class"):

> **California Class**: All persons who purchased Paparazzi Products in the State of California within the Relevant Time Period.

134.    Plaintiff Campbell seeks certification on behalf of a class defined as follows (the "Florida Class"):

> **Florida Class**: All persons who purchased Paparazzi Products in the State of Florida within the Relevant Time Period.

135.    Plaintiff Powell seeks certification on behalf of a class defined as follows (the "Georgia Class"):

**Georgia Class**: All persons who purchased Paparazzi Products in the State of Georgia within the Relevant Time Period.

136.    Plaintiff Huskey seeks certification on behalf of a class defined as follows (the "Illinois Class"):

**Illinois Class**: All persons who purchased Paparazzi Products in the State of Illinois within the Relevant Time Period.

137.    Plaintiff Cave seeks certification on behalf of a class defined as follows (the "Kansas Class"):

**Kansas Class**: All persons who purchased Paparazzi Products in the State of Kansas within the Relevant Time Period.

138.    Plaintiff Baird seeks certification on behalf of a class defined as follows (the "Kentucky Class"):

**Kentucky Class**: All persons who purchased Paparazzi Products in the State of Kentucky within the Relevant Time Period.

139.    Plaintiff Gilbert seeks certification on behalf of a class defined as follows (the "Michigan Class"):

**Michigan Class**: All persons who purchased Paparazzi Products in the State of Michigan within the Relevant Time Period.

140.    Plaintiff Covington seeks certification on behalf of a class defined as follows (the "Missouri Class"):

**Missouri Class**: All persons who purchased Paparazzi Products in the State of Missouri within the Relevant Time Period.

141.    Plaintiff Morgan seeks certification on behalf of a class defined as follows (the "New Jersey Class"):

> **New Jersey Class**: All persons who purchased Paparazzi Products in the State of New Jersey within the Relevant Time Period.

142.    Plaintiffs Clark and Hollins seek certification on behalf of a class defined as follows (the "New York Class"):

> **New York Class**: All persons who purchased Paparazzi Products in the State of New York within the Relevant Time Period.

143.    Plaintiffs Johnson, Kebort, Langston, and Williams seek certification on behalf of a class defined as follows (the "North Carolina Class"):

> **North Carolina Class**: All persons who purchased Paparazzi Products in the State of North Carolina within the Relevant Time Period.

144.    Plaintiff Sidbury seeks certification on behalf of a class defined as follows (the "Virginia Class"):

> **Virginia Class**: All persons who purchased Paparazzi Products in the State of Virginia within the Relevant Time Period.

145.    Plaintiff Jurgensen seeks certification on behalf of a class defined as follows (the "Washington Class"):

> **Washington Class**: All persons who purchased Paparazzi Products in the State of Washington within the Relevant Time Period.

146.    Plaintiffs reserve the right to modify or refine the definitions of the Nationwide Class or State Classes based upon discovery of new information and in order to accommodate any of the Court's manageability concerns. Plaintiffs refer to the Nationwide Class and the State Classes collectively as the "Class" or "Classes" except as required for clarity.

147.    Excluded from the Classes are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court

staff; and (d) any person that timely and properly excludes themselves from the Class in accordance with Court-approved procedures.

148.    **Numerosity (Rule 23(a)(1)).** The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes, as herein identified and described, are not known, but upon information and belief, the Defendant sold its products to hundreds or thousands of individuals.

149.    **Commonality (Rule 23 (a)(2) and 23(b)(3)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following but are not limited to:

a.    whether Defendant sold Products that had detectable levels of nickel and lead;

b.    whether Defendant advertised, represented, or held itself out as producing or manufacturing Products that were safe to wear;

c.    whether Defendant expressly warranted the Products;

d.    whether Defendant purported to disclaim any express warranty;

e.    whether Defendant purported to disclaim any implied warranty;

f.    whether any limitation on warranty fails to meet its essential purpose;

g.    whether Defendant intended for Plaintiffs, the Class members, and others to purchase the Products;

h.    whether Defendant intended or foresaw that Plaintiff, the Class members, and others would wear the Products;

i.    whether and in what manner Defendant was negligent in manufacturing or processing the Products;

j.   whether Defendant's negligence proximately caused loss, injury, or damages to the Class members;

k.   whether the Class members suffered direct losses or damages;

l.   whether the Class members suffered indirect losses or damages;

m.   whether the Class members are entitled to actual or other forms of damages and other monetary relief; and

n.   whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

150.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

151.   **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and members of the Class (as applicable) suffered injuries as a result of Defendant's wrongful conduct that is uniform across the Class.

152.   **Adequacy (Rule 23(a)(4)).** Plaintiffs' interests are aligned with the Class(es) they seek to represent. Plaintiffs have and will continue to fairly and adequately represent and protect the interest of the Class. Plaintiffs have retained competent counsel highly experienced in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interest of the Class. Plaintiffs have no interest that is

antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class.

153.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

154.    **Superiority - Federal Rule of Civil Procedure 23(b)(3).** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a.  The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct;

    b.  Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing

individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court;

c.  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant;

d.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

155.  **Manageability**. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

156.  Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

157.  **Notice**. Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

### COUNT 1
### NEGLIGENT MISREPRESENTATION
#### (On Behalf of the Nationwide Class and State Classes)

158.    This claim incorporates by reference all previous allegations in the complaint.

159.    Plaintiffs bring this cause of action on behalf of themselves and the Classes against Defendant.

160.    As alleged herein, Defendant made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging, in the Products' advertisements, and/or on Defendant's website, specifically the describing the Products as "lead-free and nickel-free."

161.    Defendant described the Products as "lead-free and nickel-free" in order to sell the Products to Plaintiffs and members of the Classes and increase their profits.

162.    Plaintiffs and Class Members purchased the Products described as "nickel-free and lead free" because they wanted products that did not contain lead or nickel.

163.    Plaintiffs and Class Members reasonably relied upon Defendant's representations that the Products did not contain lead or nickel.

164.    Plaintiffs and Class Members suffered economic and other losses because the Products did in fact contain lead and nickel.

165.    Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

**COUNT 2**
**FRAUDULENT MISREPRESENTATION**
**(On Behalf of the Nationwide Class and State Classes)**

166.    This claim incorporates by reference all previous allegations in the complaint.

167.    Plaintiffs bring this cause of action on behalf of themselves and the Classes against Defendant.

168.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

a.    **WHO:** Defendant, Paparazzi, LLC, made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "nickel-free and lead-free."

b.    **WHAT:** Defendant's conduct here was fraudulent because it has the effect of deceiving consumers into believing that the Products are "nickel-free and lead-free" products. Defendant omitted telling Plaintiffs and Class Members that the Products are not "nickel-free and lead-free" products. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has represented that the Products are "nickel-free and lead-free" products when they are not and has omitted from the Products' labeling the fact that there are other products available in the market that actually are free of both nickel and lead.

46

c. **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "nickel-free and lead-free" products, continuously throughout the applicable Class period(s).

d. **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "lead-free and nickel-free" products were located online which instantly catches the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction.

e. **HOW:** Defendant made written misrepresentations on their website that the Products were "nickel-free and lead-free" even though they contained nickel and lead. As such, Defendant's "nickel-free and lead-free" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling and their online advertising and website the fact that the Products actually contained nickel and lead. And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "nickel-free and lead-free" representations before purchasing the Products.

f. **WHY:** Defendant misrepresented its Products as being "nickel-free and lead-free" products and omitted from the Products' labeling the fact that there was in fact nickel and lead in the Products for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

169.     As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging, in the Products' advertisements, and/or on Defendant's website, specifically the describing the Products as "lead-free and nickel-free" as alleged more fully herein.

170.     Defendant made these material "lead-free and nickel-free" Representations and omissions in order to induce Plaintiff and Class Members to purchase the Products.

171.     Defendant knew the "lead-free and nickel-free" Representations regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling. In reliance on these "lead-free and nickel-free" Representations, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Products.

172.     Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

173.     As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT 3
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class and State Classes)

174.     This claim incorporates by reference all previous allegations in the complaint.

175.     Plaintiffs bring this cause of action on behalf of themselves and the Classes against Defendant.

176.    Plaintiffs and Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products represented to be "lead-free and nickel-free" and when the Products actually contained nickel and lead, and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

177.    Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

178.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

179.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products with "lead-free and nickel-free" representations, which caused injuries to Plaintiffs and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

180.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the misrepresentations regarding what the Products were and what they contained.

181.     Defendant either knew or should have known that payments rendered by Plaintiffs and Class Members were given and received with the expectation that the "lead-free and nickel-free" representations made by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging were true. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the "lead-free and nickel-free" representations are not true.

182.     Plaintiffs and Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

183.     When required, Plaintiffs and Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized "consultants" or salespersons acting as agents of Defendant for the purpose of selling Defendant's Products.

184.     As a direct result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT 4
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class and State Classes)

185.    Plaintiffs, individually and on behalf of the Classes, bring this cause of action and hereby adopt and incorporate by reference all allegations contained in the preceding paragraphs, as if fully set forth herein.

186.    Defendant manufactures markets, advertises, distributes, and sells its Products as part of its regular course of business.

187.    Defendant is, and was at all relevant times, a "merchant" under U.C.C. § 2-313, and State U.C.C. provisions.

188.    Until at least December 2021, in connection with its advertisement and sale of the Products, Defendant expressly represented and warranted that its Products were free of lead and nickel.

189.    Defendant's pervasive marketing campaign includes the warranty representations described herein, which are made on Paparazzi's websites, social media accounts, as well as in product specifications and Defendant's statements to the public.

190.    These representations are affirmations of fact and promises that the Products were free of lead and nickel.

191.    Defendant made these express representations and warranties to all consumers, including Plaintiffs and Class Members.

192.    Plaintiffs and Class Members purchased the Products from Defendant.

193.    Defendant's foregoing express representations and warranties are the basis of the bargain between Plaintiffs, Class Members and Defendant.

194.    The express written warranties covering the Products are a material part of the bargain between Defendant and consumers. When making these express warranties, Defendant knows that reasonable consumers purchase the Products because they believe these products to be as marketed.

195.    As designer, manufacturer, marketer, advertiser, distributer and seller of the Products, Defendant had knowledge and notice that the Products contained lead and nickel, which was unknown to consumers at the time of sale.

196.    Defendant breached the foregoing express warranties by placing the Products into the stream of commerce and selling them to consumers when, despite Defendant's representations to the contrary, the Products contained lead and nickel and were therefore not free of these materials, as promised in Defendant's marketing and public comments.

197.    Defendant further breached its express written warranties in that the Products contained lead and nickel on the first day of purchase and by failing to disclose and actively concealing this information, and therefore the unwanted risk of the adverse effects associated with these materials, from consumers.

198.    Defendant further breach its warranties because it fails or refuses to adequately replace the Products with products that are actually as represented, despite its knowledge that its Products contain lead and nickel and/or despite its knowledge of alternative formulations, designs, materials, and/or options for manufacturing the Products without lead and nickel.

199.    It is reasonably foreseeable that Plaintiffs and Class Members are the intended beneficiaries of the Products and warranties, creating privity or an exception to any privity requirement. Plaintiffs and each of the Class Members are the intended beneficiaries of

Defendant's warranties and the sale of the Products through Defendant's consultants. The consultants are not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided by Defendant. Defendant's warranties are designed for and intended to benefit the consumer only, and Plaintiffs and Class Members are the intended beneficiaries of the Products.

200.    Defendant has been provided sufficient notice of its breaches of the express warranties associated with the Products.

201.    Defendant received further notice and has been on notice of its breach of warranties through its sale of the Products, its own testing, and online reports about independent third-party testing of its Products.

202.    The presence of lead and nickel render the Products unfit for their intended use and purpose and substantially impair the use and value of the Products.

203.    Plaintiffs and Class Members purchased the Products, which were not lead and nickel free, as promised by Defendant. Instead, they received products that contained lead and/or nickel. As a result, Plaintiffs and Class Members suffered a loss of the product, loss of use of the product, loss of the product's intended benefits, and loss of the benefit of their bargain.

204.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breaches of warranties because they would not have purchased the Products if the true facts had been known. Specifically, Plaintiffs and Class Members suffered economic damages at the point-of-sale in connection with their payment/overpayment for the Products, as well as the loss of the Products' intended benefits, which include avoiding exposure to unwanted risk of adverse effects.

205.    Accordingly, Plaintiffs and Class Members are entitled to legal and equitable relief including compensatory damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain, as well as any additional relief the Court deems proper.

## COUNT 5
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and State Classes)

206.    Plaintiffs, individually and on behalf of the Classes, bring this cause of action and hereby adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

207.    Defendant is a merchant and, at all relevant times, has been involved in the manufacturing, distributing, warranting, and/or selling of the Products.

208.    The Products are goods as defined by U.C.C. § 2-105, and State U.C.C. provisions and Defendant knows or has reason to know of the specific use for which the Products, as goods, are purchased.

209.    The implied warranty of merchantability included with the sale of each Product means that Defendant warrants that the Products are fit for the ordinary purposes for which the Products are used and sold, and are not otherwise injurious to consumers, that the Products would pass without objection in the trade, be of fair and average quality, and conform to Defendant's promises and affirmations of fact. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and consumers, which include Plaintiffs and Class Members.

210.    Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing Products that are free of lead and nickel.

211.    Defendant's warranty applies to the original purchaser and any succeeding owner of the Products, creating privity between Defendant and Plaintiffs and Class Members.

212.    Notwithstanding, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties. Defendant's consultants are not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties are designed for and intended to benefit the consumer only and Plaintiffs and Class Members are their intended beneficiaries.

213.    More specifically, Defendant's intention that their warranties apply to Plaintiffs and Class Members is evident from the statements contained in their marketing and public comments. Likewise, it is reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Products and warranties.

214.    Defendant impliedly warrant that the Products are of merchantable quality and fit for such use. These implied warranties include, inter alia: (i) a warranty that the Products, which are designed, manufactured, supplied, distributed, and/or sold by Defendant, are free of lead and nickel.

215.    Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, are not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members. Instead, the Products suffered, and continues to suffer, from a formulation, design and/or manufacture defect, as alleged herein.

216.    Defendant's failure to adequately repair or replace the Products cause the warranty to fail of its essential purpose.

217.    Defendant breached its implied warranties because the Products are sold with lead and nickel.

218.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law, as well as any additional relief the Court deems proper.

## COUNT 6

**VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**Ala. Code § 18-19-1, *et seq.***
**(On behalf of the Alabama Class)**

219.    Alabama Plaintiff Carnelius Anderson ("Alabama Plaintiff"), individually and on behalf of the Alabama Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

220.    The claim under the Alabama Deceptive Trade Practices Act ("ADTPA") is brought by the Alabama Plaintiff against Paparazzi on behalf of herself and the Alabama Class.

221.    Paparazzi is a "person" as defined by Ala. Code § 8-19-3(5).

222.    Alabama Plaintiff and Alabama Class members are "consumers" as defined by Ala. Code § 8-19-3(2).

223.    Paparazzi is engaged in "trade" or "commerce" as those terms are defined by Ala. Code § 8-19-3(8).

224.    Paparazzi received notice pursuant to Ala. Code § 8-19-10(e) concerning its wrongful conduct as alleged herein by Alabama Plaintiff and Alabama Class members. However, sending pre-suit notice pursuant to Ala. Code § 8-19-10(e), however, is an exercise in futility for Alabama Plaintiff because Paparazzi has already been informed of the allegedly unfair and deceptive conduct as described herein by the consumer class action complaints filed against Paparazzi for the matters alleged herein.

225.    Paparazzi advertised and sold the Products in Alabama and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

226.    The ADTPA declares "deceptive acts or practices in the conduct of any trade or commerce" to be unlawful, Ala. Code § 8-19-5, including but not limited to "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," "[a]dvertising goods or services with intent not to sell them as advertised," id. §§ 8-19-5(5), (7), (9).

227.    Paparazzi engaged in deceptive trade practices that violated the ADTPA by knowingly making false and misleading statements about the characteristics of the Products, including, as set forth herein, the repeated and consistent claims that its Products were nickel and lead free. These claims are false and likely to mislead or deceive the public and put Plaintiffs' health and wellbeing at risk.

228.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or

household purposes by Alabama Plaintiff and Alabama Class Members, and violated, *inter alia*, the following sections of the ADTPA:

     a.  § 8-19-5(5): "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have,"

     b.  § 8-19-5(7): "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and,

     c.  § 8-19-5(9): "[a]dvertising goods or services with intent not to sell them as advertised," *id*. §§ 8-19-5(5), (7), (9).

229.    Paparazzi intentionally and knowingly misrepresented and failed to disclose material facts about the nature and characteristics of the Products that it had a duty to disclose with the specific intent of misleading the Alabama Plaintiff and the Alabama Class.

230.    Paparazzi knew or should have known that its conduct violated the ADTPA.

231.    Paparazzi owed the Alabama Plaintiff and the Alabama Class members a duty to disclose these materials facts about the nature and characteristics of the Products because Paparazzi, *inter alia*, (a) possessed exclusive knowledge about the manufacturing of the Products; (b) possessed exclusive knowledge about the testing and quality control processes undertaken with respect to the Products; (c) possessed exclusive knowledge about its marketing and promotion strategies involving the intentional representation that its products were lead and nickel free; and, (d) made false and misleading representations, and required its sales representatives acting on its behalf to make false and misleading representations, about the nature and characteristics of the Products.

232.    Paparazzi had a duty to disclose the truth about its Products, including that they were not actually lead and nickel free.

233.    Paparazzi's misrepresentation and omissions were material to the Alabama Plaintiff and the Alabama Class.

234.    Alabama Plaintiff and the Alabama Class relied on Paparazzi's material misrepresentations and omission as identified herein.

235.    Alabama Plaintiff and the Alabama Class could not have discovered through the exercise of reasonable diligence that Paparazzi's Products were not lead and nickel free. Alabama Plaintiff and the Alabama Class members acted reasonably in relying upon Paparazzi's misrepresentations and omission, the truth of which they could not have discovered.

236.    Had Paparazzi disclosed to the Alabama Plaintiff and the Alabama Class members the truth about the nature and characteristics of the Products, including the fact that the Products did in fact contain lead and nickel, the Alabama Plaintiff and the Alabama Class members would not have purchased the Products. Instead, Paparazzi kept these material facts secret and embarked on a disinformation campaign aimed at convincing consumers that its Products were safe and free from lead and nickel.

237.    Paparazzi had an ongoing duty to the Alabama Plaintiff and the Alabama Class to refrain from unfair and deceptive acts and practices under the ADTPA.

238.    As a direct and proximate result of Paparazzi's unfair and deceptive acts and practices, the Alabama Plaintiff and the Alabama Class have suffered injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

239.    Alabama Plaintiff and the Alabama Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or statutory damage, treble damages, injunctive relief, reasonable attorneys' fees and costs, all allowed under Ala. Code §§ 8-19-10(a)(1), (2), (3), and as permitted under the ADTPA and applicable law.

## COUNT 7

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of the California Class)**

240.    California Plaintiffs Burgess, Dornaus, Jackson, Rodriguez, and Smiley individually and on behalf of the California Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

241.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

242.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiffs and California Class Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that the Products have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that Products are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising the Products with intent not to sell them as advertised; and

    d.   § 1770(a)(16): representing the Products have been supplied in accordance with a previous representation when it has not.

243.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

244.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

245.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff has provided a letter to Defendant concurrently with the filing of this Class Action Complaint to provide Defendant with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices.

246.    Plaintiffs provided Defendant notice of their claims under the CLRA.

247.    Pursuant to California Civil Code § 1780, Plaintiffs seek monetary relief, injunctive relief, restitution, actual damages, and reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT 8

**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of the California Class)**

248.    California Plaintiffs Burgess, Dornaus, Jackson, Rodriguez, and Smiley individually and on behalf of the California Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

249.    The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

250.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

251.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

252.    <u>Unlawful</u>:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

    a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; and

    b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.

253.    <u>Unfair</u>:

    a.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

    b.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

    c.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not

outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

254.    <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

255.    As set forth herein, Defendant's claims that its Products were nickel and lead free are false and likely to mislead or deceive the public.

256.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

257.    California Plaintiffs and Class Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

258.    Defendants' conduct caused and continues to cause substantial injury to California Plaintiffs and Class members.  California Plaintiffs and Class members have suffered injury in fact as a result of Defendants' unlawful conduct.

259.    In accordance with Bus. & Prof. Code § 17203, California Plaintiffs seek an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

260.    California Plaintiffs and Class members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT 9

**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On behalf of the California Class)**

261.    California Plaintiffs Burgess, Dornaus, Jackson, Rodriguez, and Smiley individually and on behalf of the California Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

262.    The California Plaintiffs identified above, individually and on behalf of the California Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

263.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

264.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

265.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Products misled consumers acting reasonably as to Defendants' representations about quality, the presence of nickel and lead, and product manufacturing and oversight, as stated above.

266.    California Plaintiffs suffered injury in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' false and misleading

labeling claims concerning the Products,' among other things, quality, components, and product manufacturing and oversight, as stated above.

267.    Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from their advertising.

268.    Defendants profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

269.    As a result, California Plaintiffs, California Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

270.    Pursuant to Cal. Bus. & Prof. Code § 17535, California Plaintiffs, on behalf of members of the California Class, seek an order enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT 10

### VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. Ann. §§ 501.201, *et seq.*
### (On behalf of the Florida Class)

271.    This claim incorporates by reference all previous allegations in the complaint.

272.    Plaintiff Campbell brings this cause of action on behalf of herself and the Florida Class against Defendant for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 et seq. ("FDUTPA").

273.     Plaintiff and all Florida Class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. See id. § 501.203(7)-(8).

274.     The Products are "goods" within the meaning of FDUTPA. FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204.For the reasons discussed herein, Defendant violated and continues to violate the FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, et seq. Defendant's acts and practices, including its omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment. Defendant repeatedly advertised, both on its website, through its consultants, and in its national marketing materials, among other items, that the Products were lead and nickel free.

275.     Contrary to these representations, the Products do on fact contain lead and nickel.

276.     Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

277.     Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

278.     Defendant's deceptive and unlawful acts and practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and Class Members, would not have purchased the Products had they known that the Products were defective.

279.     Defendant's violations described herein present a continuing risk to Plaintiff and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

280.     As a result of Defendant's misconduct, Plaintiff and Class Members have been harmed and suffered actual damages in that the Products cannot be safely used as intended.

281.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members have been damaged, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

282.     Plaintiff seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the FDUTPA and applicable law.

## COUNT 11

**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")**
**O.C.G.A. § 10-1-390, *et seq.***
**(On behalf of the Georgia Class)**

283.     Georgia Plaintiff Patricia Powell ("Georgia Plaintiff"), individually and on behalf of the Georgia Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

284.    The claim under the Georgia Fair Business Practices Act ("GFBPA") is brought by the Georgia Plaintiff on behalf of herself and the Georgia Class.

285.    Paparazzi is a "person" as defined by the GFBPA. O.C.G.A. § 10-1-392(a)(24).

286.    Georgia Plaintiff and Georgia Class members are "consumers" within the meaning of the GFBPA. O.C.G.A. § 10-1-392(a)(6).

287.    The act and practices described herein are "consumer transactions" as defined by the GFBPA. O.C.G.A. § 10-1-392(a)(10).

288.    Paparazzi received notice pursuant to O.C.G.A. § 10-1-399(b) concerning its wrongful conduct as alleged herein by the Georgia Plaintiff and Georgia Class members. However, sending pre-suit notice pursuant to O.C.G.A. § 10-1-399(b), however, is an exercise in futility for the Georgia Plaintiff because Paparazzi has already been informed of the allegedly unfair and deceptive conduct as described herein by the consumer class action complaints filed against Paparazzi for the matters alleged herein.

289.    Paparazzi advertised and sold the Products in Georgia and engaged in trade or commerce directly or indirectly affecting the people of Georgia.

290.    The GFBPA is to be liberally construed to protect consumers "from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10-3-391(a).

291.    The GFBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have," "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another," [a]dvertising goods or services with intent not to sell them as advertised." Id. §§ 10-1-393(b)(5), (7) & (9).

292.    Paparazzi engaged in deceptive trade practices that violated the GFBPA by knowingly making false and misleading statements about the characteristics of the Products, including, as set forth herein, the repeated claims that its Products were nickel and lead free. These claims are false and likely to mislead or deceive the public and put Plaintiffs' health and wellbeing at risk.

293.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by the Georgia Plaintiff and Georgia Class members, and violated, *inter alia*, the following sections of the GFBPA:

   a.   § 10-1-393(b)(5): "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have,"

   b.   § 10-1-393(b)(7): "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another,"

   c.   § 10-1-393(b)(9): [a]dvertising goods or services with intent not to sell them as advertised."

294.    Paparazzi intentionally and knowingly misrepresented and failed to disclose material facts about the nature and characteristics of the Products that it had a duty to disclose with the specific intent of misleading the Georgia Plaintiff and Georgia Class.

295.    Paparazzi knew or should have known that its conduct violated the GFBPA.

296.    Paparazzi owed the Georgia Plaintiff and Georgia Class members a duty to disclose these materials facts about the nature and characteristics of the Products because Paparazzi, *inter alia*, (a) possessed exclusive knowledge about the manufacturing of the Products; (b) possessed exclusive knowledge about the testing and quality control processes undertaken with respect to the Products; (c) possessed exclusive knowledge about its marketing and promotion strategies involving the intentional representation that its products were lead and nickel free; and, (d) made false and misleading representations, and required its sales representatives acting on its behalf to make false and misleading representations, about the nature and characteristics of the Products.

297.    Paparazzi had a duty to disclose the truth about its Products, including that they were not actually lead and nickel free.

298.    Paparazzi's misrepresentation and omissions were material to the Georgia Plaintiff and Georgia Class.

299.    The Georgia Plaintiff and Georgia Class relied on Paparazzi's material misrepresentations and omission as identified herein.

300.    The Georgia Plaintiff and Georgia Class could not have discovered through the exercise of reasonable diligence that Paparazzi's Products were not lead and nickel free. Georgia Plaintiff and Georgia Class members acted reasonably in relying upon Paparazzi's misrepresentations and omission, the truth of which they could not have discovered.

301.    Had Paparazzi disclosed to the Georgia Plaintiff and Georgia Class members the truth about the nature and characteristics of the Products, including the fact that the Products did contain lead and nickel, the Georgia Plaintiff and Georgia Class members would not have purchased the Products. Instead, Paparazzi kept these material facts secret and embarked on a disinformation campaign aimed at convincing consumers that its Products were safe and free from lead and nickel.

302.    Paparazzi had an ongoing duty to the Georgia Plaintiff and Georgia Class to refrain from unfair and deceptive acts and practices under the GFBPA.

303.    As a direct and proximate result of Paparazzi's unfair and deceptive acts and practices, the Georgia Plaintiff and Georgia Class have suffered injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

304.    Georgia Plaintiff and Georgia Class members seek all monetary and non-monetary relief allowed by law, including actual and statutory damages, treble damages, punitive damages, equitable relief, and reasonable attorneys' fees and costs, under O.C.G.A. § 10-1-399, and as permitted under the GFBPA and applicable law.

## COUNT 12
### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT ("GUDPTA")
### O.C.G.A. § 10-1-370, *et seq.*
### (On behalf of the Georgia Class)

305.    Georgia Plaintiff Patricia Powell ("Georgia Plaintiff"), individually and on behalf of the Georgia Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

306.     The claim under the Georgia Uniform Deceptive Trade Practices Act ("GUDPTA") is brought by the Georgia Plaintiff on behalf of herself and the Georgia Class.

307.     Paparazzi is a "person" as defined by the GUDTPA under O.C.G.A. § 10-1-371(5).

308.     Paparazzi advertised and sold the Products in Georgia and engaged in trade or commerce directly or indirectly affecting the people of Georgia.

309.     The GUDTPA prohibits "deceptive trade practices" and penalizes any person who "[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another, "[a]dvertises goods or services with intent not to sell them as advertised," and "[e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. § 10-1-372(5), (7), (9), and (12).

310.     Paparazzi engaged in deceptive trade practices that violated the GUDPTA by knowingly making false and misleading statements about the characteristics of the Products, including, as set forth herein, the repeated claims that its Products were nickel and lead free. These claims are false and likely to mislead or deceive the public and put Plaintiffs' health and wellbeing at risk.

311.     Paparazzi intentionally and knowingly misrepresented and failed to disclose material facts about the nature and characteristics of the Products that it had a duty to disclose with the specific intent of misleading the Georgia Plaintiff and Georgia Class.

312.     Paparazzi knew or should have known that its conduct violated the GUDTPA.

313.    Paparazzi owed the Georgia Plaintiff and Georgia Class members a duty to disclose these materials facts about the nature and characteristics of the Products because Paparazzi, *inter alia*, (a) possessed exclusive knowledge about the manufacturing of the Products; (b) possessed exclusive knowledge about the testing and quality control processes undertaken with respect to the Products; (c) possessed exclusive knowledge about its marketing and promotion strategies involving the intentional representation that its products were lead and nickel free; and (d) made false and misleading representations, and required its sales representatives acting on its behalf to make false and misleading representations, about the nature and characteristics of the Products.

314.    Paparazzi had a duty to disclose the truth about its Products, including that they were not actually lead and nickel free.

315.    Paparazzi's misrepresentation and omissions were material to the Georgia Plaintiff and Georgia Class.

316.    The Georgia Plaintiff and Georgia Class relied on Paparazzi's material misrepresentations and omission as identified herein.

317.    The Georgia Plaintiff and Georgia Class could not have discovered through the exercise of reasonable diligence that Paparazzi's Products were not lead and nickel free. Georgia Plaintiff and Georgia Class members acted reasonably in relying upon Paparazzi's misrepresentations and omission, the truth of which they could not have discovered.

318.    Had Paparazzi disclosed to the Georgia Plaintiff and Georgia Class members the truth about the nature and characteristics of the Products, including the fact that the Products did contain lead and nickel, the Georgia Plaintiff and Georgia Class members would not have purchased the Products. Instead, Paparazzi kept these material facts secret and embarked on a

disinformation campaign aimed at convincing consumers that its Products were safe and free from lead and nickel.

319.    Paparazzi had an ongoing duty to the Georgia Plaintiff and Georgia Class to refrain from unfair and deceptive acts and practices under the GUDTPA.

320.    As a direct and proximate result of Paparazzi's unfair and deceptive acts and practices, the Georgia Plaintiff and Georgia Class have suffered injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

321.    Georgia Plaintiff and Georgia Class members seek all monetary and non-monetary relief allowed by law under the GUDTPA, O.C.G.A. § 10-1-363 and applicable law.

## COUNT 13

### VIOLATION OF ILLINOIS CONSUMER FRAUD & DECEPTIVE BUSINESS PRACTICES ACT
### 815 Ill. Comp. Stat. §§ 505/1, *et seq.*
### (On behalf of the Illinois Class)

322.    This claim incorporates by reference all previous allegations in the complaint.

323.    Plaintiff Huskey brings this cause of action on behalf of herself and the Illinois Class against Defendant.

324.    Defendant constitutes a "person" as defined by 815 ILCS §§ 505/1(c).

325.    Plaintiffs and Illinois Class members are "consumers" as defined by 815 ILCS §§ 505/1(e).

326.    Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Defendant's conduct is described in full detail above.

327.    Defendant's deceptive, unfair, and unlawful trade acts or practices, as described herein, are in violation of 815 ILCS § 505/2.

328.    As described herein, Defendant repeatedly advertised that its Products were free of nickel and lead.

329.    Contrary to these representations, the Products do in fact contain nickel and lead.

330.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

331.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

332.    Defendant intended to mislead Plaintiff Huskey and Illinois Class members and induce them to rely on its misrepresentations and omissions.

333.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

334.    Defendant acted intentionally, knowingly, and maliciously to violate Illinois' Consumer Fraud Act, and recklessly disregarded Plaintiff Huskey and Illinois Class members' rights. Defendant's knowledge of Defendant's Products' abilities and health and safety risks from their use put them on notice that Defendant's Products were not as they advertised.

335.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Huskey and Illinois Class members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

336.     Plaintiff Huskey and Illinois Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

## COUNT 14

### VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### 815 Ill. Comp. Stat. Ann. §§ 510/1 through 510/7
### (On behalf of the Illinois Class)

337.     This claim incorporates by reference all previous allegations in the complaint.

338.     Plaintiff Huskey brings this cause of action on behalf of herself and the Illinois Class against Defendant.

339.     Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

340.     Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

    a.    Defendant designed, formulated, manufactured, labeled, packaged, marketed, advertised, distributed and sold the Products when they knew, or should have known, that the Products have the propensity to cause, and have caused, adverse reactions, such as rashes or skin irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

    b.    Defendant knew or should have known that the Products that the Products have the propensity to cause, and have caused, adverse reactions, such as rashes or

skin irritation, which was unknown to and would not easily be discovered by Plaintiffs and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products so that consumers would not get the benefit of their bargain;

c.  Defendant knew or should have known that the Products that the Products have the propensity to cause, and have caused, adverse reactions, such as rashes or skin irritation, but nevertheless, failed to disclose and/or concealed that the Products can cause, and had caused, adverse reactions when used as intended;

d.  Marketing and selling the Products, which relied upon false claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

e.  Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

f.  Making affirmative public representations about benefits of the Products while, at the same time, not ensuring that consumer health and safety.

341.   As described herein, Defendant repeatedly advertised, both through its consultants, multi-tier marketing, on its website, and through a national advertising campaign, among other items, that the Products free of lead and nickel.

342.   Contrary to these representations, the Products contain nickel and lead.

343.     Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

344.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

345.     The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Huskey and Illinois Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

346.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Huskey and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages caused by the Products.

347.     Plaintiff Huskey and Illinois Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**COUNT 15**
**VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT,**
**Kan. Stat. Ann. § 50-623 *et seq*.**
**(On behalf of the Kansas Class)**

348.     This claim incorporates by reference all previous allegations in the complaint.

349.     Plaintiff Cave brings this cause of action on behalf of herself and the Kansas Class against Defendant.

350.    Kan. Stat. Ann. § 50-623 et seq. is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

351.    The Kansas Plaintiff and Class members are "consumers" as defined by Kan. Stat. Ann. § 50-624(b).

352.    The acts and practices described herein are "consumer transactions," as defined by Kan. Stat. Ann. § 50-624(c).

353.    Defendant is a "supplier" as defined by Kan. Stat. Ann. § 50-624(l).

354.    Defendant advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

355.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

356.    Defendant engaged in deceptive acts and practices when they advertised that their products did not contain nickel or lead when it in fact did contain nickel and lead. See Kan. Stat. Ann. § 50-626(b)(1)(D). Defendant also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Kan. Stat. Ann. § 50-627 by making misrepresentations and false statements concerning the presence of nickel and lead in its Products, knowingly taking advantage of the inability of Kansas Plaintiff and the Class members to reasonably protect their interests, due to their lack of knowledge (see Kan. Stat. Ann. § 50-627(b)(1)); and requiring the Kansas Plaintiff and Class members to enter into a consumer transaction on terms that Defendants knew were substantially one-sided in favor of Defendants (see Kan. Stat. Ann. § 50-627(b)(5)).

357.    The Kansas Plaintiff and Class members had unequal bargaining power with respect to their purchase and/or use of Defendant's Products because of Defendant's omissions and misrepresentations.

358.    The above unfair, deceptive, and unconscionable practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Kansas Plaintiff and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

359.    As a direct and proximate result of Defendants' deceptive acts and practices, the Kansas Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

360.    The Kansas Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under Kan. Stat. Ann. §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 16

### VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT
### Ky. Rev. Stat. §§ 367.110, *et seq.*
### (On behalf of the Kentucky Class)

361.    This claim incorporates by reference all previous allegations in the complaint.

362.    Plaintiff Baird brings this cause of action on behalf of herself and the Kentucky Class against Defendant.

363.    Defendant is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

364.    Defendant advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

365.    Defendant engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, when it marketed its Products as lead free and nickel free when the Products in fact contained both lead and nickel.

366.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, and did in fact deceive reasonable consumers.

367.    The Kentucky Plaintiff and Class members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Defendants' unlawful acts and practices.

368.    The above unlawful acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Kentucky Plaintiff and Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

369.    As a direct and proximate result of Defendants' deceptive acts and practices, the Kentucky Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

370.    The Kentucky Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 17

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws. Ann. 445.903,** *et seq.*
**(On behalf of the Michigan Class)**

371.    This claim incorporates by reference all previous allegations in the complaint.

372.    Plaintiff Gilbert brings this cause of action on behalf of herself and the Michigan Class against Defendant.

373.    Defendant, Plaintiff, and Michigan Class members are "persons" as defined by Mich. Comp. Laws. Ann. § 445.902(d).

374.    Defendant advertised, solicited, offered for sale or distribution property or any other article and therefore engaged in "trade or commerce," as that term is defined by Mich. Comp. Laws Ann. § 445.902(g).

375.    Defendant engaged in deceptive acts and practices in the conduct of trade or commerce in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.903(1), including:

    a.    Representing that is Products have characteristics, uses and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(c);

    b.    Representing that is Products are of a particular standard or quality when they were another, in violation of Mich. Comp. Laws Ann. § 445.903(e);

    c.    Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(bb); and

d.  Failing to reveal facts that are material to the transaction in light of representation of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(cc).

376.  Defendant's false marketing and sale of its Products as free of lead and nickel when its Products contained these materials had the capacity or tendency to deceive consumers and did indeed deceive Plaintiff and members of the Michigan Class.

377.  The presence of lead and nickel in the Products is material information to consumers like Plaintiff and the State Class. Defendant falsely and/or misleadingly represented this material information intentionally, knowingly, willfully, wantonly, and with reckless disregard for the truth.

378.  Plaintiff and the State Class were induced to purchase the Products by Defendant's marketing, to which all consumers were exposed.

379.  As a direct and proximate result of Defendant's deceptive practices, Plaintiff and the State Class have suffered injury, including ascertainable losses of money.

380.  Pursuant to the Michigan Consumer Protection Act, Plaintiff and the Michigan Class seek all monetary and non-monetary relief allowed by law, including actual damages, and other additional relief that is just and proper.

## COUNT 18

### VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
### RS Mo. §§ 407.010, *et seq.*
### (on behalf of the Missouri Class)

381.  This claim incorporates by reference all previous allegations in the complaint.

382.    Plaintiff Covington brings this cause of action on behalf of herself and the Missouri Class against Defendant.

383.    Defendant is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

384.    Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

385.    Plaintiff Covington and Missouri Class members purchased goods primarily for personal, family, or household purposes.

386.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

387.    As described herein, Defendant repeatedly advertised, both though its consultants, multi-tier advertising, on its website and through a national advertising campaign, among other items, that the Products did not contain lead or nickel.

388.    Contrary to the representations made in Defendant's uniform marketing materials, the Products do contain lead and/or nickel.

389.    Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as rashes and skin irritation along with more severe ailments from prolonged exposure, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

390.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

391.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

392.    Defendant recklessly disregarded Plaintiff Covington and Missouri Class members' rights.

393.    Defendant's knowledge of the Defendant's Products' abilities and safety and health risk put them on notice that Defendant's Products were not as they advertised.

394.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Covington and Missouri Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages caused by the Products.

395.    Plaintiff Covington and Missouri Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, declaratory relief, and any other appropriate relief, as allowed by law.

## COUNT 19

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (On behalf of the New Jersey Class)

396.    This claim incorporates by reference all previous allegations in the complaint.

397.    Plaintiff Morgan brings this cause of action on behalf of herself and the New Jersey Class against Defendant.

398.    The New Jersey Plaintiff identified above, individually and on behalf of the New Jersey Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

399.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

400.    Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

401.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq., prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

402.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

403.    As a direct and proximate result of Defendant's deceptive acts and practices, the New Jersey Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Paparazzi Products.

404.    The New Jersey Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**COUNT 20**

**VIOLATIONS OF FALSE ADVERTISING UNDER NEW YORK LAW
N.Y. Gen. Bus. Law § 350, *et seq.*
(On behalf of the New York Class)**

405.    This claim incorporates by reference all previous allegations in the complaint.

406.    Plaintiffs Clark and Hollins bring this cause of action on behalf of themselves and the New York Class against Defendant.

407.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.

408.    New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity... to which the advertising relates." Id.

409.    Defendant's labeling, marketing, and advertising of the Products as free of nickel and lead, as alleged herein, are "misleading in a material respect," and are thus "false advertising." As more fully set forth above, Defendant repeatedly advertised, both through its consultants and multi-tiered marketing, on its website, through a national advertising campaign, among other items, that the Products were free of nickel and lead.

410.    These claims are false as the Products do in fact contain nickel and lead. Thus, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as skin irritation and rashes, rendering the Products unsuitable for consumer use as

marketed by Defendant. Additionally, prolonged exposure to nickel and lead can cause more severe ailments.

411.    While engaged in the conduct of business, trade, and commerce, Defendant did attempt to directly and/or indirectly induce consumers to purchase the Products by its labeling. In doing so, Defendant utilized false labeling which did not represent the true nature and quality of the Products, but rather mislead consumers into believing that the Products were safe and did not cause adverse reactions. The false labeling was materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances.

412.    Defendant's conduct caused and continues to cause injury to consumers, including Plaintiffs Clark and Hollins and the New York Class members, in that they were misled to believe that they were purchasing Products that were safe, and did not have the propensity to cause, and had not caused, adverse reactions.

413.    In making and disseminating the false labeling and statements alleged herein, Defendant knew, or should have known, that its practices were materially deceptive and misleading in violation of NY Gen. Bus. Law § 350, et seq.

414.    Plaintiffs Clark and Hollins and the New York Class members based their decision to purchase the Products in substantial part on Defendant's labeling, advertisements, material representations and omitted facts. The revenue to Defendant attributable to the sale of the Products likely is significant.

415.    Based on all of the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiffs Clark and Hollins and the New York Class members to sustain injury in fact –the loss of monies paid for the Products.

416.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, et seq.

417.    Plaintiffs Clark and Hollins seek an order enjoining Defendant from continuing this false advertising. Absent enjoining this false advertising, Defendant will continue to mislead Plaintiffs Clark and Hollins and the New York Class members and, in doing so, irreparably harm each of the New York Class members.

418.    As a direct and proximate result of Defendant's violation of New York General Business Law section 350, Plaintiff Hollins and the New York Class members have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs Clark and Hollins and the New York Class Members also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e(3).

## COUNT 21

**VIOLATIONS OF UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW**
**N.Y. Gen. Bus. Law § 349, *et seq.***
**(On behalf of the New York Class)**

419.    This claim incorporates by reference all previous allegations in the complaint.

420.    Plaintiffs Clark and Hollins bring this cause of action on behalf of themselves and the New York Class against Defendant.

421.    Defendant is a "person," as defined by N.Y. Stat. Ann. § 56:8-1(d).

422.    Defendant engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

423.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

424.    Defendant acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the Plaintiffs and New York Class members' rights.

425.    As a direct and proximate result of Defendant's deceptive acts and practices, the Plaintiffs and New York Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Paparazzi's Products.

426.    Defendant's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Paparazzi Products.

427.    The above deceptive and unlawful practices and acts by Defendant caused substantial injury to the New York Plaintiffs and Class members that they could not reasonably avoid.

428.    New York Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT 22
### VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### N.C. Gen. Stat. §§ 75-1.1, *et seq.*
### (On behalf of the North Carolina Class)

429.    This claim incorporates by reference all previous allegations in the complaint.

430.    Plaintiffs Johnson, Kebort, Langston, and Williams bring this cause of action on behalf of themselves and the North Carolina Class against Defendant.

431.    Defendant engaged in commerce, as defined by N.C. Gen. Stat. § 75-1.1.

432.    Defendant's false marketing and sale of its Products as free of lead and nickel when its Products contained these materials had the capacity or tendency to deceive consumers and did indeed deceive Plaintiffs and members of the North Carolina Class.

433.    The presence of lead and nickel in the Products is material information to consumers like Plaintiffs and the North Carolina Class. Defendant falsely and/or misleadingly represented this material information knowingly, willfully, wantonly, and with reckless disregard for the truth.

434.    Plaintiffs and the North Carolina Class were induced to purchase the Products by Defendant's marketing, to which all consumers were exposed. Plaintiffs and the North Carolina Class have been injured as a result of their reliance on Defendant's deceptive marketing and sales practices.

435.    Pursuant to the North Carolina Unfair and Deceptive Trade Practices Act, Plaintiffs and the North Carolina Class seek declaratory relief, full refund, actual and punitive damages, statutory damages, and attorneys' fees.

## COUNT 23

**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code Ann. §§ 59.1-196, *et seq.***
**(On behalf of the Virginia Class)**

436.    This claim incorporates by reference all previous allegations in the complaint.

437.    Plaintiff Sidbury brings this cause of action on behalf of herself and the Virginia Class against Defendant.

438.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

439.    Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.

440.    Defendant is a "supplier," as defined by Va. Code Ann. § 59.1-198.

441.    Defendant engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

442.    Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

443.    The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

444.    Defendant's labeling, marketing and advertising of the Products as free of nickel and lead, as alleged herein, are misleading in a material respect, and are thus false advertising. As more fully set forth above, Defendant repeatedly advertised, both through its consultants and multi-

tiered marketing, on its website, through a national advertising campaign, among other items, that the Products were free of nickel and lead.

445.    Defendants' representations and omissions were material because they were likely to deceive, and did deceive, reasonable consumers.

446.    As a direct and proximate result of Defendants' deceptive acts and practices, the Virginia Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

447.    Defendants' violations present a continuing risk to Virginia Plaintiff and Class members as well as to the general public.

448.    The Virginia Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 24

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW § 19.86,** *et seq.*
**(On behalf of the Washington Class)**

449.    Washington Plaintiff Jeanette Jurgenson ("Washington Plaintiff"), individually and on behalf of the Washington Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

450.    The claim under the Washington Consumer Protection Act is brought by the Washington Plaintiff on behalf of herself and the Washington Class.

451.    Paparazzi's foregoing unfair and deceptive acts and practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured the Washington Plaintiff and the Washington Class.

452.    Paparazzi's forgoing deceptive acts and practices, including its omission, were material, in part, because they concerned an essential part of the Products' intended use and provision of safety to the Washington Plaintiff and the Washington Class members. Paparazzi omitted material facts about the safety of the Products and about the Products' nature and characteristics that were material to the Washington Plaintiff and the Washington Class members. Rather than disclose this material information, Paparazzi marketed and labeled the Products as being lead and nickel free. These claims are false and likely to mislead or deceive the public and put Plaintiffs' health and wellbeing at risk.

453.    Paparazzi's foregoing deceptive acts and practices, including its omission, were deceptive acts or practices in violation of the Washington Consumer Protection Act, RCW §§ 19.86 et seq. Paparazzi intentionally and knowingly misrepresented and failed to disclose material facts about the nature and characteristics of the Products that it had a duty to disclose with the specific intent of misleading the Washington Plaintiff and Washington Class.

454.    Paparazzi owed the Washington Plaintiff and Washington Class members a duty to disclose these materials facts about the nature and characteristics of the Products because Paparazzi, inter alia, (a) possessed exclusive knowledge about the manufacturing of the Products; (b) possessed exclusive knowledge about the testing and quality control processes undertaken with respect to the Products; (c) possessed exclusive knowledge about its marketing and promotion strategies involving the intentional representation that its products were lead and nickel free; and,

(d) made false and misleading representations, and required its sales representatives acting on its behalf to make false and misleading representations, about the nature and characteristics of the Products.

455.    Paparazzi had a duty to disclose the truth about its Products, including that they were not actually lead and nickel free.

456.    Paparazzi's misrepresentation and omissions were material to the Washington Plaintiff and Washington Class.

457.    Washington Plaintiff and Washington Class members relied on Paparazzi's material misrepresentations and omission as identified herein.

458.    Washington Plaintiff and the Washington Class could not have discovered through the exercise of reasonable diligence that Paparazzi's Products were not lead and nickel free. Alabama Plaintiff and the Alabama Class members acted reasonably in relying upon Paparazzi's misrepresentations and omission, the truth of which they could not have discovered.

459.    Had Paparazzi disclosed to the Washington Plaintiff and the Washington Class members the truth about the nature and characteristics of the Products, including the fact that the Products did contain lead and nickel, the Washington Plaintiff and the Washington Class members would not have purchased the Products. Instead, Paparazzi kept these material facts secret and embarked on a disinformation campaign aimed at convincing consumers that its Products were safe and free from lead and nickel.

460.    Paparazzi's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

461.    Consumers, including the Washington Plaintiff and Washington Class members, would not have purchased the Products had they known about their nature and characteristics.

462.    As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Washington Plaintiff and Washington Class members have been damaged as alleged herein, and are entitled to recover actual damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

463.    In addition, the Washington Plaintiff and Washington Class members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiffs as Class Representatives of the Nationwide Class and their respective State Classes;

C.    Name Plaintiffs' counsel as Class Counsel for the Classes;

D.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs, the Classes in an amount to be determined at trial;

E.    Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

F.    Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.    Award Plaintiffs, the Classes pre-judgment and post-judgment interest at the highest

legal rate to the extent provided by law; and

H.    Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

RESPECTFULLY SUBMITTED, on March 13, 2023.

BY:

**ANDERSON & KARRENBERG**

By*: /s/ Jared D. Scott*
Jared D. Scott (#15066)
Jacob W. Nelson (#16527)
50 W. Broadway Ste 600
Salt Lake City, UT 84101
Telephone: (801) 534-1700
jscott@aklawfirm.com
jnelson@aklawfirm.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Patrick Wallace (*pro hac vice*)
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
pwallace@milberg.com

**MAGINNIS HOWARD**
Karl S. Gwaltney (*pro hac vice*)
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: (919) 526-0450
kgwaltney@maginnishoward.com

**MASON LLP**
Gary E. Mason
Danielle L. Perry
5335 Wisconsin Ave., Suite 640
Washington, DC 20015
Telephone: (202) 429.2290
gmason@masonllp.com
dperry@masonllp.com

**SHUB LAW FIRM LLC**
Jonathan Shub
134 Kings Highway East
2nd Floor
Haddonfield, NJ 08033
Tel: 856.772.7200
jshub@shublawyers.com

*Counsel for Plaintiffs and Classes*