IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL JOHNSON; CARNELIUS ANDERSON; JUDY BAIRD; IRENE BURGESS; NANCY CAMPBELL; CASSANDRA CAVE; LUCILLE CLARK; JERI COVINGTON; DEANNA DORNAUS; HEATHER GILBERT; TAMIE HOLLINS; JACQUELINE HUSKEY; DEANNA JACKSON; JEANETTE JURGENSEN; NANCY KEBORT; KAREN LANGSTON; CATOYYA MORGAN; PATRICIA POWELL; NELISHA RODRIGUEZ; ALISA SIDBURY; DENISE SMILEY; and, LESLIE ANN WILLIAMS, *Plaintiffs*, v. PAPARAZZI, LLC, *Defendant*. | **MEMORANDUM DECISION AND ORDER DISMISSING THE FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE WITH LEAVE TO AMEND** Case No. 2:22-cv-00439-AMA-PK District Judge Ann Marie McIff Allen Magistrate Judge Paul Kohler |

Before the Court are Defendant's Motion to Dismiss and Plaintiffs' Motion for Status Conference.[1] Having reviewed the parties' briefing, the record, and the law, the Court will DISMISS Plaintiffs' First Consolidated Amended Class Action Complaint ("Amended Complaint") without prejudice, and allow them to amend. The Court will also DENY Plaintiffs' Motion for Status Conference because this Order apprises the parties of the status of the case.

---

[1] Defendant Paparazzi, LLC's Motion to Dismiss Plaintiffs' First Consolidated Amended Class Action Complaint ("Motion to Dismiss"), ECF No. 69; Motion for Status Conference, ECF No. 91.

1

## I. BACKGROUND

Defendant Paparazzi, LLC ("Paparazzi") is a jewelry and fashion-accessory wholesaler headquartered in Saint George, Utah.[2] Paparazzi sells its products to independent contractors ("Consultants") who then resell the products to consumers.[3] Plaintiffs are twenty-two consumers from fourteen states.[4]

Paparazzi advertised that its products were lead- and nickel-free.[5] But around December 2021, former Paparazzi Consultants grew suspicious of that claim.[6] So, they sent ten pieces of Paparazzi's metallic jewelry to a third party company to discover the jewelry's composition.[7] Test results showed that each jewelry piece contained lead or nickel or both.[8] Then, Plaintiffs conducted a "confirmatory, independent third-party testing" which "revealed that every Paparazzi Product tested contained significant amounts of lead or nickel, or both . . . ."[9] Some Plaintiffs also suffered physical reactions when wearing Paparazzi products.[10]

---

[2] First Consolidated Amended Class Action Complaint and Jury Trial Demanded ("Amended Complaint"), ECF No. 59, at 2, 16; Mot. to Dismiss, ECF No. 69, at 3. As explained hereafter, the Court will treat the facts alleged in the Amended Complaint as true for purposes of the Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) challenge.

[3] Am. Compl., ECF No. 59, at 2; Mot. to Dismiss, ECF No. 69, at 3.

[4] Am. Compl., ECF No. 59, at 5-16.

[5] *Id.* at 3.

[6] *Id.* at 25.

[7] *Id.* at 26; *see also id.* at 26 n.9 (hyperlinked article explaining the source of the test).

[8] *Id.* at 26.

[9] *Id.*

[10] Am. Compl., ECF No. 59, at 6-9, 11, 14-16.

In April 2022, several Plaintiffs brought this putative class action against Paparazzi in the Eastern District of North Carolina.[11] The case was later transferred to the District of Utah.[12] Plaintiffs then filed an Amended Complaint adding eighteen plaintiffs with twenty-four counts of requested relief.[13]

Generally, Plaintiffs claim that Paparazzi designed, sourced, and sold them products it falsely advertised as being lead- and nickel-free.[14] They allege that had they known Paparazzi's products contained lead and nickel, they would not have purchased the products or would have paid less for them.[15]

On May 15, 2023, Paparazzi filed this Motion to Dismiss.[16] Plaintiffs filed their Opposition.[17] Paparazzi then filed its Reply and two notices of supplemental authority.[18] Plaintiffs filed a responsive notice of supplemental authority.[19] Finally, Plaintiffs requested a status conference.[20]

---

[11] Compl., ECF. No. 1, at 1.

[12] Order, ECF No. 21.

[13] Am. Compl., ECF No. 59, at 1, 45-96.

[14] Am. Compl., ECF No. 59, at 5-16; Attorney Planning Meeting Report, ECF No. 72, at 2.

[15] Am. Compl., ECF No. 59, at 5-16, 30, 37-38, 53.

[16] Mot. to Dismiss, ECF No. 69.

[17] Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' First Consolidated Amended Class Action Complaint ("Opposition"), ECF No. 77.

[18] Defendant Paparazzi, LLC's Reply in Further Support of its Motion to Dismiss Plaintiffs' Amended Consolidated Complaint ("Reply"), ECF No. 80. Notice of Supplemental Authority in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Consolidated Complaint ("Def. Supp. I"), ECF No. 84. Notice of Supplemental Authority in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Consolidated Complaint ("Def. Supp. II"), ECF No. 86.

[19] Plaintiffs' Response to Defendant's Notice of Supplemental Authority ("Pl. Supp."), ECF No. 87.

[20] Mot. for Status Conference, ECF No. 91.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Lack of Subject-Matter Jurisdiction

Parties may move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Tenth Circuit distinguishes attacks on subject-matter jurisdiction as either facial or factual. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* (internal citations omitted). "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* The "party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). When a court finds that it lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3).

### B. Rule 12(b)(6) Failure to State a Claim

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are viewed in the light most favorable to the plaintiff and "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171 (10th Cir. 2015).

## III. ANALYSIS

Paparazzi argues that Plaintiffs lack subject-matter jurisdiction under Rule 12(b)(1) and fail to state a claim under Rule 12(b)(6).[21] Though Paparazzi does not specify whether this is a facial or factual attack, it does not dispute the underlying facts asserted in the Amended Complaint.[22] Instead, it takes the facts in the Amended Complaint as true and argues they fail to establish standing.[23] Therefore, Paparazzi challenges the Amended Complaint on facial grounds and the Court must assume the allegations in the Amended Complaint are true for standing purposes. *Pueblo of Jemez*, 790 F.3d at 1147-48, 1148 n.4; *see also Baker*, 979 F.3d at 872 (assuming the allegations as true for challenges to standing).

### A.   Article III Standing

"It is well established, [] that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). Courts established under Article III of the United States Constitution are empowered to hear and resolve "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. Though many issues may be presented as a case or a controversy, Article III courts may only hear those that are "appropriately resolved through the judicial process." *Whitmore*, 495 U.S. at 155 (internal citation omitted).

---

[21] Mot. to Dismiss, ECF No. 69, at 1-2.

[22] *See id.*

[23] *See id.* at 1-5, 7-10.

Standing is therefore a "bedrock constitutional requirement that . . . applie[s] to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023) (internal citations omitted). And it applies to named plaintiffs in a class action. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Donelson v. United States*, 730 Fed. Appx. 597, 601 (10th Cir. 2018) ("even in class actions, named plaintiffs must possess standing." (internal citation omitted)).

Standing requires a plaintiff to have (1) suffered an injury in fact, (2) a traceable connection between the injury and the defendant's alleged conduct, and (3) an injury that will be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal citation omitted and cleaned up). And "[a]bsent a plaintiff with constitutional standing, federal courts lack jurisdiction." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-93 (2009)).

       1.    *Plaintiffs alleging Physical Reactions have Standing.*

Eleven Plaintiffs meet the requirements to show standing because they allege they suffered a physical injury from Defendant's products. Plaintiffs plead that "[s]tudies have shown that roughly 12 to 17% of women and 1 to 3% of men are allergic to nickel," that nickel can be absorbed through the skin, and that these allergies can

6

cause itchy rashes, blisters, discoloration, and other symptoms at the site of contact with skin.[24] Plaintiffs also plead that nickel "[r]eactions can begin within hours or days of the exposure . . . and may last as long as two to four weeks."[25] The eleven Plaintiffs allege they purchased a misbranded product because, despite the products being advertised as lead and nickel free, the items caused rashes, headaches, skin discoloration, infected ears, and other physical symptoms allegedly consistent with exposure to nickel or lead.[26] Assuming these facts are true, it is plausible that Plaintiffs purchased nickel-tainted jewelry because they suffered the expected physical reactions to such contaminants.

Therefore, Plaintiffs alleging physical reactions have standing because they plausibly allege injuries in fact (economic injuries with products plausibly purchased) that are traceable (physical symptoms when wearing Paparazzi Products) to the alleged misconduct (nickel-tainted jewelry and false advertisement of that jewelry). Consequently, the Court enjoys Article III standing for these Plaintiffs in this case. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) ("If at least one plaintiff has standing, the suit may proceed.").

### B. Dismissal of Remaining Claims with Leave to Amend

Although the Court enjoys standing under Article III to hear this matter, it has discretion to address standing with regard to the remaining Plaintiffs. *See*

---

[24] Am. Compl., ECF No. 59, at 27-28.

[25] *Id.* at 27.

[26] *Id.* at 6-9, 11, 14-16 (Plaintiffs Judy Baird, Nancy Campbell, Cassandra Cave, Lucille Clark, Jeri Covington, Jacqueline Huskey, Deanna Jackson, Catoyya Morgan, Patricia Powell, Nelisha Rodriguez, and Denise Smiley alleging physical reactions to lead and nickel in the jewelry.).

7

*Thiebaut v. Colorado Springs Utilities*, 455 Fed. App'x 795, 802 (10th Cir. 2011) ("courts retain discretion to analyze the standing of all plaintiffs in a case and to dismiss those plaintiffs that lack standing"); *see also Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451 (10th Cir. 1994) (determining one plaintiff had standing and another did not). Here, the Court declines to reach the issue of standing for the remaining Plaintiffs on the present record. Rather, having clarified the standing issue with regard to the Plaintiffs who allegedly suffered physical harm from Paparazzi's products, *see infra* Part III.A.1, the Court finds the most productive course of action will be to dismiss the Amended Complaint in its entirety and allow Plaintiffs their requested opportunity to amend.[27] Then, Plaintiffs can refine their pleadings and Defendant and the Court can more effectively evaluate any remaining disputed issues. This course will also allow both parties to more fully articulate points they have attempted to make in various notices of supplemental authority and responses thereto.[28]

When revising their Amended Complaint, Plaintiffs should allege all facts they wish to include to supplement the record with regard to their claims, including Article III standing, of Plaintiffs Carnelius Anderson, Irene Burgess, Deanna Dornaus, Heather Gilbert, Tamie Hollins, Crystal Johnson, Jeanette Jurgensen, Nancy Kebort, Karen Langston, Alisa Sidbury, Leslie Ann Williams. It is questionable whether

---

[27] Opp'n, ECF No. 77, at 29 (requesting leave to amend if the motion to dismiss is granted in any respect). While the Court indulges this request in Plaintiffs' Opposition, it may be less lenient in the future given the District's Local Rules. *See* D.U. Civ. R. 7-1(a)(3) ("A party may not make a motion . . . or a cross-motion in a response or reply.").

[28] *See, e.g.*, ECF Nos. 84, 86, 87, 89, & 90.

Plaintiffs have adequately alleged the necessary facts to support claims for these Plaintiffs. Plaintiffs allege they purchased their products at various times between 2016 and 2022.[29] Then, a first third-party testing happened around December 2021 or January 2022 on ten pieces of Paparazzi jewelry without further detail.[30] And at an unspecified time, Plaintiffs "sought and obtained confirmatory, independent third-party testing . . . ."[31] While the Amended Complaint also alleges that the second testing was done "in accordance with accepted industry standards,"[32] Plaintiffs do not allege what was tested. In revising the Amended Complaint, Plaintiffs should provide the Court with all facts known to them that might support their claims here, including those relevant to standing. Some issues that stand out are a failure to allege facts that might link the products Plaintiffs purchased to the products tested by Plaintiffs and others. The detail regarding testing is notably light on facts (i.e. the timing of the test, when the products tested were purchased, the number and type(s) of items tested, whether Plaintiffs tested items they actually purchased, etc.).

Finally, Plaintiffs should take care to remove claims from their Amended Complaint that they have already conceded should be dismissed. The Court expects these claims will not be presented in the forthcoming amended complaint. Specifically, Plaintiffs Huskey (IL), Baird (KY), Clark (NY) and Hollins (NY) concede their implied warranty claims should be dismissed; Plaintiffs Baird (KY), Gilbert

---

[29] Am. Compl., ECF No. 59, at 5-16.

[30] *Id.* at 25-26.

[31] *Id.* at 26.

[32] *Id.*

(MI), Clark (NY) and Hollins (NY) concede their express warranty claims should be dismissed; Plaintiffs Huskey (IL), Clark (NY), Hollins (NY), Johnson (NC), Kebort (NC), Langston (NC), Williams (NC), and Sidbury (VA) concede their negligent misrepresentation claims should be dismissed; Plaintiff Clark (NY) concedes her implied and express warranty claims should be dismissed as time-barred; Plaintiffs Powell (GA) and Huskey (IL) concede their Uniform Deceptive Trade Practices Act claims should be dismissed; and all Plaintiffs concede all claims for injunctive relief should be dismissed.[33]

## IV. ORDER

The Court DISMISSES Plaintiffs' Complaint without prejudice. Plaintiffs may file a second amended complaint consistent with this decision within 30 days of this Order.[34] Upon Plaintiffs' filing of a second amended complaint, the Court will also grant leave to Defendant to file an amended motion to dismiss 28 days thereafter. Subsequent briefing shall be done consistent with the deadlines set forth in the relevant local rules and Federal Rules of Civil Procedure.

Finally, this Order addresses the status of the case and provides next steps for the parties and an opportunity for briefing to the extent necessary, via a second

---

[33] Opp'n., ECF No. 77, at 12 n.2, 14 n.3, 15 n.4, 24 n.7, 27 n.8, 29 n.9; *see also* ECF No. 77-1, at 1-4.

[34] In light of the Court's ruling, Plaintiffs are expected to evaluate whether they can satisfy the jurisdictional requirements of the Class Action Fairness Act ("CAFA") when contemplating the filing of a second amended complaint. *See Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017) (listing CAFA jurisdictional requirements.).

amended complaint and related motions. The Court will therefore DENY Plaintiffs' Motion for Status Conference.[35]

SIGNED this 28th day of March, 2025

BY THE COURT:

_____
Hon. Ann Marie McIff Allen
United States District Judge

---

[35] Mot. for Status Conference, ECF No. 91.