UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **CRYSTAL JOHNSON et al,**<br><br>Plaintiffs,<br><br>v.<br><br><br>**PAPARAZZI, LLC,**<br><br>Defendant. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS & DENYING PLAINTIFF'S MOTION TO FILE SURRESPONSE**<br><br>Civil No. 2:22-cv-00439-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on the Motion to Dismiss filed by Defendant Paparazzi, LLC,[1] as well as on Plaintiffs' Objection to New Evidence and Motion for Leave to File Surresponse.[2] The Court did not hear oral argument. For the reasons below, the Court will grant in part and deny in part Defendant's Motion, and the Court will deny Plaintiffs' Motion.

**<u>BACKGROUND</u>[3]**

Defendant Paparazzi, LLC is a multi-level marketing business that advertises and sells jewelry and other accessories to consultants across the United States, who then sell the jewelry

---

[1] ECF No. 99, filed June 16, 2025.

[2] ECF No. 113, filed August 18, 2025.

[3] Given the breadth of this putative class action, the Court provides in this section only a brief summary of the most relevant allegations and procedural history. For the purposes of the Motion to Dismiss, the Court assumes all well-pleaded allegations contained in Plaintiffs' Second Amended Class Action Complaint ("SACAC") as true. ECF No. 94.

and other accessories to consumers.[4] During the time period relevant to this action, a central tenet of Defendant's marketing and sales strategy was to promote its products as being lead- and nickel-free, and Defendant's marketing appeals prominently featured these lead- and nickel-free claims.[5] Furthermore, Defendant emphasized to its consultants that the lead- and nickel-free nature of the products was a key characteristic and selling point and required that consultants repeat such claims.[6]

Lead is a soft, malleable metal with low hardness that is prone to scratching, denting, and losing shape.[7] It can be less aesthetically pleasing than other metals due to its potential to limit the visual luster of a piece of jewelry.[8] Additionally, it is a toxic metal that has been linked to causing severe long-term health problems.[9]

Nickel can be used as a base metal to reduce costs in low-price costume jewelry.[10] Moisture and sweat can cause nickel to tarnish over time, causing jewelry containing nickel to develop a dull or discolored appearance.[11] Nickel is also an allergen that can cause reactions such as rashes, hives, headaches, vomiting, and fatigue.[12]

According to the Second Amended Class Action Complaint ("SACAC"), Defendant knew that wearing accessories containing lead and nickel would be undesirable to many consumers because these materials are considered low-quality and unwanted due to their

---

[4] ECF No. 94 ¶ 3.
[5] Id. ¶¶ 4–5.
[6] Id. ¶¶ 53, 57.
[7] Id. ¶¶ 80, 82.
[8] Id. ¶ 80.
[9] Id. ¶ 81.
[10] Id. ¶ 83.
[11] Id. ¶ 84.
[12] Id. ¶ 87.

propensity to trigger adverse effects, such as allergic reactions and skin discoloration.[13] Moreover, Defendant claimed that it had, for years, analyzed tens of thousands of items and over 100,000 tests.[14] However, around late 2021, a group of Defendant's customers began to conduct laboratory testing of the products and discovered that Defendant's "lead- and nickel-fee" claims were false with respect to the tested products.[15] Thereafter, at some point between November 20, 2021 and January 9, 2022, Defendant stopped representing its products as being lead- and nickel-free.[16] On December 22, 2021, Defendant admitted its jewelry may contain trace amounts of lead and nickel.[17] Later, on March 3, 2025, Defendant entered into a consent decree with the State of Washington in which Defendant agreed to pay a sum of money and to refrain from advertising its products as free of lead and nickel unless independent testing indicated the products contained no detectible amount of those compounds.[18]

After the Court granted leave to amend the previous putative class action complaint,[19] the SACAC was filed on April 28, 2025.[20] In the SACAC, twenty-two Plaintiffs from fourteen different states seek relief for themselves and others similarly situated through this putative class action.[21] While the specific allegations differ for each Plaintiff, all Plaintiffs represent that they purchased Paparazzi products for personal purposes and that they were denied a benefit that they paid for—lead- and nickel-free jewelry—but did not receive.[22] Defendant filed the instant

---

[13] *Id.* ¶ 89.
[14] *Id.* ¶ 102.
[15] *Id.* ¶ 9.
[16] *Id.*
[17] *Id.* ¶ 107.
[18] *Id.* ¶ 110.
[19] *See* ECF No. 93.
[20] ECF No. 94.
[21] *See id.* ¶¶ 13–34, 137–150.
[22] *See id.* ¶¶ 13–34.

Motion to Dismiss on June 16, 2025.[23] Plaintiffs filed their response on July 14, 2025,[24] to which

Defendant replied on August 11, 2025.[25] Following Defendant's Reply, Plaintiffs filed their

Objection to New Evidence and Motion for Leave to File Surresponse on August 18, 2025.[26]

Defendants responded to Plaintiffs' Motion on August 25, 2025.[27]

## **LEGAL STANDARD**

Defendant brings its Motion to Dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

"Because standing is jurisdictional, a motion to dismiss for lack of standing is properly

asserted under" 12(b)(1).[28] "Motions to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) may take one of two forms": a party may make a facial challenge, questioning the

sufficiency of the complaint, or a factual challenge, questioning the facts beyond the complaint

upon which subject matter jurisdiction depends.[29] "In addressing a facial attack, the district court

must accept the allegations in the complaint as true."[30] But "[i]n addressing a factual attack, the

court does not presume the truthfulness of the complaint's factual allegations, but has wide

discretion to allow affidavits, other documents and a limited evidentiary hearing."[31]

Under Federal Rule of Civil Procedure 12(b)(6), a claim is subject to dismissal if the

plaintiff's complaint fails to "state a claim upon which relief can be granted." In construing a

---

[23] ECF No. 99.
[24] ECF No. 107.
[25] ECF No. 112.
[26] ECF No. 113.
[27] ECF No. 114.
[28] *Farmer v. Walmart, Inc.*, 729 F. Supp. 3d 1202, 1213 (D.N.M. 2024) (citing *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004)).
[29] *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).
[30] *Id.*
[31] *Id.* (citation modified).

4

plaintiff's complaint, courts assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff.[32] To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[33] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."[34] Furthermore, "courts may consider documents that a plaintiff (1) attaches to [her] complaint; incorporates by reference in [her] complaint; or (3) refers to in [her] complaint and that are central to [her] complaint and indisputably authentic."[35]

"'The dismissal of a complaint . . . for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal or failure to state a claim' under Rule 12(b)(6)."[36] Pursuant to Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake."[37] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[38] "[T]he most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading."[39] Under most circumstances, "a complaint stating the 'who, what, where, when, and

---

[32] *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[35] *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (citation modified).

[36] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023) (alterations in original) (quoting *Seattle-First Nat'l Bank* v. *Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (citation omitted)).

[37] Fed. R. Civ. P. 9(b).

[38] *Id*.

[39] *Clinton*, 63 F.4th at 1277 (alterations in original).

how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b)."[40] "[N]ot every allegation of fraudulent misconduct must be pleaded with particularity for a complaint to survive at the motion to dismiss stage."[41] Instead, the Court "must ask whether the complaint, taken as a whole, 'sufficiently apprise[s]' the defendant of its involvement in the alleged fraudulent conduct."[42]

## DISCUSSION

### Plaintiffs' Objection to New Evidence and Motion to File Surresponse[43]

Plaintiffs object to Defendant's inclusion of hyperlinks to two articles from the website Lead Safe Mama in its Reply,[44] and Plaintiffs ask the Court to allow Plaintiffs to file a surresponse. Defendant counters that Plaintiffs incorporated the website by reference in their SACAC such that the Court may consider the articles in resolving the Motion to Dismiss. The Court, however, determines that consideration of these articles would be improper at the pleading stage and declines to do so. Plaintiffs' surresponse is thus unnecessary.

The Court has, under Rule 12(d), "broad discretion to refuse to accept . . . extra-pleading materials and [to] resolve the motion solely on the basis of the pleading itself."[45] While "[r]eversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment[,]"[46] conversion is not

---

[40] *Id*.
[41] *Id*. at 1280.
[42] *Id*. (alterations in original) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016)).
[43] ECF No. 113.
[44] *See* ECF No. 112 at 5 n.2.
[45] *Navajo Nation v. Urb. Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (citing *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998)).
[46] *Id*.

required "when the court considers information that is subject to proper judicial notice or exhibits attached to the complaint, unless their authenticity is questioned."[47]

Regarding whether the articles at issue were incorporated by reference in Plaintiffs' SACAC, the Court finds that they were not. It is true that Plaintiffs' SACAC includes hyperlinks to an article from the same website where Defendant's articles can purportedly be found.[48] But to the extent that a hyperlinked article can be considered "attached" to a complaint, Plaintiffs attached a different article than those of Defendant. Thus, Plaintiffs did not refer to Defendant's articles nor did they cite the website generally. It does not seem that hyperlinking a specific article would subject an entire webpage to incorporation by reference, particularly where the website itself is not central to Plaintiffs' claims. Defendant has provided no authority supporting such a conclusion.

This, then, leaves the possibility of judicial notice. "A district court may take judicial notice of documents where the documents 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"[49] "When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true."[50] The Court first notes that the private website citations appear in the footnotes of Defendant's Reply, and the Court lacks information on the website and articles' source. Without such information, the Court cannot determine that the source's accuracy cannot reasonably be questioned. Moreover, it

---

[47] *Id*. (citing *Rose v. Utah State Bar,* 471 F. App'x 818, 820 (10th Cir. 2012) (unpublished)).

[48] *See* ECF No. 94 at 37 n.8.

[49] *Hampton v. Root9b Techs., Inc.*, No. 15-cv-02152-MSK-MEH, 2016 WL 7868823, at *4 (D. Colo. Aug. 3, 2016), *R&R adopted*, No. 15-cv-02152-MSK-MEH, 2016 WL 9735744 (D. Colo. Sept. 21, 2016), *aff'd*, 897 F.3d 1291 (10th Cir. 2018) (quoting Fed. R. Evid. 201(b)(2)).

[50] *Id*. (citing *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2009); *accord Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

appears that Defendant attempts to use the articles for the truth of the matter asserted therein so as to establish that not all Paparazzi products contain lead and nickel. Even if the Court could take judicial notice of these articles, it would not consider the contents of the articles for their purported truth. Thus, given the Court's broad discretion in determining whether to accept material beyond the pleadings, the Court concludes that Defendant's articles are not proper subjects for judicial notice at this stage in the proceedings. Defendant may certainly offer evidence contrary to Plaintiffs' allegations on summary judgment or at trial.

In sum, the Court finds that the articles Defendant has attached constitute extra-pleading materials that are not properly subject to judicial notice nor incorporated by reference in the SACAC.  Furthermore, the Court will not convert the Motion to Dismiss to a motion for summary judgment, as doing so would "require the Court to give notice to the parties and allow Plaintiff[s] an opportunity to present [their] own extra-pleading evidence, an inefficient process better left for a motion for summary judgment filed in the normal course of the discovery process."[51] The Court, therefore, will not consider the articles for the purposes of the Motion to Dismiss, and Plaintiffs' objection to the evidence is sustained.

As for Plaintiffs' request to file a surresponse, "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply," but "[i]f the district court does not rely on the new material in reaching its decision, it need not allow the sur-reply."[52] Even assuming that Defendant's articles can be considered new material raised for the first time on reply, any surresponse is unnecessary here as the Court will

---

[51] *Navajo Nation*, 935 F. Supp. 2d at 1157.
[52] *Origins Tech, Inc. v. Oak Equity Holdings II, LLC*, No. 2:23-cv-00326-TS-DAO, 2024 WL 22974, at *5 (D. Utah Jan. 2, 2024) (citation modified).

not consider nor rely on the articles for the purposes of the Motion to Dismiss. Plaintiffs' Motion to File Surresponse is therefore denied.

<b><u>Defendant's Motion to Dismiss[53]</u></b>

**A.    STANDING**

"Article III of the United States Constitution limits the jurisdiction of the federal courts to review only '[c]ases' and '[c]ontroversies.'"[54] "There is no case or controversy unless the plaintiff has standing."[55] "To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."[56]

"The filing of a class action does not alleviate the named plaintiff's burden to establish standing[,]"[57] and the Court "must immediately concern itself with [the named plaintiff's] standing because jurisdictional issues precede the merits."[58] "Before a putative class action can proceed, the named plaintiff, who seeks to later be the class representative, 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"[59] "Unless the named plaintiff can demonstrate the requisite case or controversy between [herself]

---

[53] ECF No. 99.
[54] *Hudson v. Boppy Co., LLC*, No. 24-1322, 2025 WL 1806182, at *2 (10th Cir. July 1, 2025) (alterations in original) (quoting U.S. Const. art. III, § 2, cl. 1).
[55] *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1073–74 (10th Cir. 2024).
[56] *Id*. at 1074.
[57] *Hudson*, 2025 WL 1806182, at *3.
[58] *Farmer*, 729 F. Supp. 3d at 1217 (alterations in original).
[59] *Hudson*, 2025 WL 1806182, at *3 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

personally and respondents, none may seek relief on behalf of h[er]self or any other member of the class."[60]

### 1.    Injury in Fact

"While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms."[61] Under the benefit-of-the-bargain theory of injury in fact, upon which Plaintiffs rely here, "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value."[62] The economic injury is thus "calculated as the difference in value between what was bargained for and what was received."[63] The Tenth Circuit has "never fully embraced or rejected a 'benefit of the bargain' theory of injury in fact for purposes of Article III standing."[64] However, following guidance from other circuit courts, district courts within the Tenth Circuit have allowed plaintiffs to proceed on this theory or those similar.[65] The Court finds the reasoning underlying the benefit-of-the-bargain theory persuasive and concludes that Plaintiffs may, if their allegations are sufficient, rely on the theory.

Here, Plaintiffs allege that they suffered economic damages resulting from the difference between the purchase price of the jewelry products as warranted and the jewelry products' actual

---

[60] *Id.* (citation modified).

[61] *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).

[62] *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018).

[63] *Id.*

[64] *Hudson*, 2025 WL 1806182, at *4.

[65] *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1240 (D. Kan. 2007) ("[P]laintiffs' benefit of the bargain damages are sufficient to demonstrate an injury in fact."); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1332–33 (D. Kan. 2018) (finding that plaintiffs adequately alleged economic loss sufficient to discharge the standing requirement by alleging that defendant's conduct caused them to pay inflated prices for a product).

value considering the presence of low quality and toxic heavy metals such as lead and nickel. According to Plaintiffs' allegations, lead is a low-quality metal prone to scratching, denting, or losing shape, thus reducing the durability and aesthetic appeal of the jewelry products.[66] Additionally, lead, which can be absorbed through the skin, has been demonstrated to cause severe long-term health problems.[67] Plaintiffs further allege that nickel is less desirable for jewelry because the nickel tarnishes over time and can cause itchy, inflamed rashes and hives, as well as headaches, vomiting, and fatigue.[68] Assuming the truth of these allegations, the Court finds that Plaintiffs have plausibly alleged that jewelry made from lead and nickel is worth less than the jewelry free from those materials that Plaintiffs thought they were purchasing.

Nonetheless, although Plaintiffs have sufficiently alleged potential economic injury, the Court "must still determine whether they sufficiently alleged that *their* products"[69] contained lead or nickel. "Otherwise, their claim that they purchased a product worth less than the product for which they bargained necessarily fails, and they are not entitled to relief under the benefit-of-the-bargain theory."[70] "The Supreme Court has made it clear that standing must be particularized, meaning that the 'alleged injury must affect the plaintiff in a *personal and individual way.*'"[71] "[I]t is not enough for a plaintiff to allege . . . that a product is at risk for manifesting [a] defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect."[72]

---

[66] ECF No. 94 ¶ 82.

[67] *Id.* ¶ 81.

[68] *Id.* ¶¶ 84–87.

[69] *Heurtas v. Bayer US LLC*, 120 F.4th 1169, 1178 (3d Cir. 2024) (emphasis in original).

[70] *Id.*

[71] *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (emphasis in original) (8th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).

[72] *Id.* (citation modified) (emphasis in original).

Eleven of the Plaintiffs—Anderson, Baird, Clark, Dornaus, Gilbert, Hollins, Huskey, Jurgensen, Langston, Powell, and Smiley—allege that they purchased Defendants' products, personally had those products tested, and found from the test results that the products contained measurable amounts of lead and nickel.[73] These Plaintiffs have thus sufficiently alleged that the products they purchased contained lead and nickel and have thereby demonstrated injury in fact.

Six of the Plaintiffs—Campbell, Cave, Covington, Jackson, Morgan, and Rodriguez—allege that they suffered physical reactions to the Paparazzi products they had purchased, including skin discoloration, itching, swelling, rashes, redness, and irritation.[74] Plaintiffs have alleged that lead and nickel have adverse effects such as causing allergic reactions and skin discoloration. Specifically, according to Plaintiffs, nickel allergies often cause itchy, inflamed rashes. Having to draw reasonable inferences arising from Plaintiffs' well-pleaded allegations in Plaintiffs' favor, the Court finds that these six Plaintiffs have plausibly alleged that the products they purchased contained lead and nickel and have thus demonstrated injury in fact.

Standing with respect to the remaining five Plaintiffs—Burgess, Johnson, Kebort, Sidbury, and Williams—is more complicated. These Plaintiffs do not allege that they personally had their products tested nor that they experienced physical reactions from wearing the products.[75] Plaintiffs attempt to rely on the allegation that *all* of Defendant's metal products contain lead and/or nickel.[76] This, however, is a conclusory assertion that Plaintiffs have failed to establish to the level of plausibility. Plaintiffs allege that Defendant's consultants tested ten

---

[73] *See* ECF No. 94 ¶¶ 13–14, 18, 20–23, 26, 28, 30, 33. Some of these plaintiffs also allege that they suffered physical reactions to the Paparazzi products they had purchased, which bolsters the finding that they have sufficiently alleged that *their* products were contaminated with lead and nickel. *See id*. ¶¶ 14, 18, 23, 30, 33.

[74] *See id*. ¶¶ 16–17, 19, 24, 29, 31.

[75] *See id*. ¶¶ 15, 25, 27, 32, 34.

[76] *Id*. ¶ 76.

pieces of jewelry and that those pieces contained lead and nickel.[77] Eleven Plaintiffs themselves tested a few pieces of jewelry—the specifics of which have not been alleged—and those pieces contained lead and nickel.[78] Plaintiffs also allege that Defendant removed its marketing claims that the products were lead- and nickel-free[79] and entered an agreement with the Washington Attorney General to refrain from advertising its products as such unless supported by independent testing.[80] Additionally, according to Plaintiffs, Defendant stated that its jewelry may contain trace amounts of lead and nickel and, upon testing 183 products, found trace, non-harmful amounts of the metals.[81] Certainly, based on these allegations, it may be possible to draw a reasonable inference that some—perhaps even many—of Defendant's metal jewelry products contain lead and/or nickel. But an inference that every piece of metal jewelry Defendant has ever sold contains lead and/or nickel is a step beyond plausibility.

It may be possible, however, for a plaintiff to rely on representative testing to establish a plausible inference that the product the plaintiff purchased was contaminated.[82] In *Kimca*, the plaintiffs relied "on testing done by their counsel and other third parties which purportedly demonstrate[d] that the Baby Food Products contained high levels of heavy metals."[83] The court found that the plaintiffs had sufficiently alleged that all of the relevant products contained heavy metals "by focus[ing] their allegations on particular product[s]."[84] For example, the plaintiffs

---

[77] *Id.* ¶ 72.
[78] *See id.* ¶¶ 13–14, 18, 20–23, 26, 28, 30, 33.
[79] *Id.* ¶ 9.
[80] *Id.* ¶ 110.
[81] *Id.* ¶¶ 107, 111.
[82] *See, e.g., Kimca v. Sprout Foods, Inc.*, No. CV 21-12977 (SRC), 2022 WL 1213488 (D.N.J. Apr. 25, 2022).
[83] *Id.* at *4.
[84] *Id.* at *5 (alterations in original) (quoting *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020)).

identified ten specific product lines produced by the company and bought by the plaintiffs, and these allegations were "supported by testing of individual packages across the ten product lines conducted by three separate entities."[85]

Here, unlike in *Kimca*, Plaintiffs have failed to, despite the Court's previous direction, focus their allegations on particular products, and this failure impacts the Court's decision with respect to the standing of Plaintiffs Burgess, Johnson, Kebort, Sidbury, and Williams. Plaintiffs Johnson, Kebort, and Williams allege that they purchased products from Paparazzi consultants who later tested products and found that they contained lead and nickel.[86] But Plaintiffs do not identify what products the consultants tested nor offer any insight as to whether the tested products were connected to those purchased by these Plaintiffs, such as whether they were from the same product line or even the same type of jewelry. The mere allegation alone that these Plaintiffs purchased items from a consultant who later tested some indeterminable number of indeterminable products is insufficient to plausibly establish that these Plaintiffs' products contained lead and nickel. Plaintiffs Burgess and Sidbury do not even allege that they purchased products from a consultant who later tested products.[87] While the SACAC's allegations include information on testing done by some of the Plaintiffs and others, there are no allegations connecting the products Plaintiffs Burgess and Sidbury purchased to the products that were tested. Indeed, it is unclear what these Plaintiffs even purchased, other than that the products were primarily metal or had a metal base. Thus, Plaintiffs Burgess and Sidbury have also failed to plausibly allege that the products they purchased contained lead and nickel. As such, these five Plaintiffs have failed to plausibly allege that they suffered an injury in fact sufficient to

---

[85] *Id.*
[86] *See* ECF No. 94 ¶¶ 25, 27, 34.
[87] *See id.* ¶¶ 15, 32.

establish standing. The Court thus dismisses without prejudice the claims of Plaintiffs Burgess, Johnson, Kebort, Sidbury, and Williams.

In sum, Plaintiffs Anderson, Baird, Clark, Dornaus, Gilbert, Hollins, Huskey, Jurgensen, Langston, Powell, Smiley, Campbell, Cave, Covington, Jackson, Morgan, and Rodriguez have succeeded in plausibly alleged a particularized injury in fact. Plaintiffs Burgess, Johnson, Kebort, Sidbury, and Williams have not done so, and thus the Court dismisses their claims without prejudice for lack of subject matter jurisdiction and with leave to amend.[88]

2.      *Traceability*

While the Court finds that seventeen Plaintiffs have sufficiently alleged an injury in fact, Defendant disputes whether these injuries are fairly traceable to Defendant's conduct. "Traceability is an essential element of standing, and '[a]t the very least, parties bringing a lawsuit must have suffered injury that is fairly traceable to the violation for which they seek redress.'"[89] To establish traceability, "a plaintiff must allege a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[90] "[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury."[91]

---

[88] "Absent a request to amend, a district court may dismiss the action rather than sua sponte granting leave to amend." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1256 (10th Cir. 2024). Plaintiffs have not requested leave to amend their SACAC, either in their response or in a formal motion. However, as the Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court finds it appropriate here to exercise its discretion to sua sponte grant Plaintiffs leave to amend.

[89] *Hudson*, 2025 WL 1806182, at *4 (alterations in original) (quoting *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 942–43 (10th Cir. 2003)).

[90] *Id.* (citation modified).

[91] *Id.* (alterations in original) (quoting *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021)).

Significantly, "[t]he traceability requirement should not be conflated with the merits of a claim for relief."[92]

Here, the Plaintiffs allege that Defendant advertised its products as lead- and nickel-free. Plaintiffs allege that they purchased the products based on these advertisements, and Plaintiffs allege that, but for Defendant's misrepresentations, they would not have purchased or would have paid less for the products. Based on these allegations, the Court finds that the alleged injuries in fact are "fairly traceable" to Defendant's alleged conduct. The remaining seventeen Plaintiffs have therefore sufficiently satisfied the standing requirements at this stage.

## B. Timeliness

Defendant argues that Plaintiffs Jackson, Powell, Cave, and Clark's claims are time-barred. "A statute of limitations defense 'may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished."[93] The Court will address each Plaintiff at issue in turn.

### 1. Plaintiff Jackson (California)

Defendant contends that Plaintiff Jackson's fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, California Consumer Legal Remedies Act ("CLRA"), and California False Advertising Law ("FAL") claims are time-barred. "CLRA and FAL claims are subject to a three-year statute of limitations[.]"[94] "The statute of limitations for a claim sounding in fraud[,]" which includes Plaintiff Jackson's negligent misrepresentation and unjust enrichment

---

[92] *Id.* at *5.

[93] *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (alterations in original) (quoting *Lee v. Rocky Mountain UFCW Union & Emp'rs Tr. Pension Plan*, 13 F.3d 405, at *1 (10th Cir. 1993) (unpublished table decision)).

[94] *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 799 (N.D. Cal. 2022) (citing Cal. Civ. Code § 1783; Cal. Civ. Proc. Code § 338(a)).

16

claims, as they are based on the same allegations as the fraudulent misrepresentation claim, "is similarly three years."[95]

"A cause of action accrues when the claim is complete with all of its elements."[96] "Although this ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements."[97] This is known as the discovery rule.[98] Under the discovery rule, "[p]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."[99] "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her."[100]

Here, Plaintiff Jackson alleges that she purchased Paparazzi Products "[a]t various points throughout 2018–19[.]"[101] She did not, however, file suit until May 23, 2022.[102] If Plaintiff Jackson's claims accrued when she purchased the defective products, products purchased before May 23, 2019, would fall outside the three-year limitation. However, under the discovery rule, "accrual is postponed until the plaintiff either discovers or has reason to discover the existence of

---

[95] *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1100 (N.D. Cal. 2007) (citing Cal. Civ. Proc. Code § 338(d)).

[96] *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008).

[97] *Id.*

[98] *Id.* at 1055.

[99] *Id.* at 1054.

[100] *Id.*

[101] ECF No. 94 ¶ 24.

[102] *See Rodriguez v. Paparazzi, LLC*, No. 2:22-cv-03500-JFW-AGR, ECF No. 1 (C.D. Cal. May 23, 2022). "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

a claim."[103] Defendant argues that Plaintiff Jackson had reason to discover the claim when she, due to her nickel allergy, experienced skin itching, redness, and discoloration at the site where she wore the jewelry.[104] But the SACAC lacks sufficient information from which the Court can determine *when* Plaintiff Jackson's allergic reaction occurred, and thus the Court cannot determine when she was put on notice. The dates given in the SACAC do not, therefore, make clear that the rights Plaintiff Jackson sues upon have been extinguished, and dismissal on this basis is improper at this stage.

### 2. *Plaintiff Powell (Georgia)*

Defendant contends that Plaintiff Powell's fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, breach of express warranty, breach of implied warranty, and Georgia Fair Business Practices Act ("GFBPA") claims are time-barred. In Georgia, claims for fraud, negligent misrepresentation, and unjust enrichment are governed by four-year statutes of limitations.[105] Warranty claims, whether based on express warranties or implied warranties, are similarly subject to a four-year statute of limitations.[106] Claims under the GFBPA must be filed no "[m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation[.]"[107]

Georgia law provides that a statute of limitations is tolled "[i]f the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action."[108]

---

[103] *Platt Elec. Supply, Inc.*, 522 F.3d at 1054.
[104] *See* ECF No. 94 ¶ 24.
[105] *See Coe v. Proskauer Rose, LLP*, 878 S.E.2d 235, 241 (Ga. 2012) (citing Ga. Code Ann. § 9–3–31); *S.B. v. Tenet Healthcare Corp.*, No. 1:17–cv–00075–RWS, 2017 WL 6389675, at *7 (N.D. Ga. Aug. 11, 2017), *aff'd*, 732 F. App'x 721 (11th Cir. 2018) (citing Ga. Code Ann. § 9–3–25).
[106] *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1288 (N.D. Ga. 2018).
[107] Ga. Code Ann. § 10–1–401(1).
[108] *Id*. § 9–3–96.

"In such circumstances, the limitations period runs from the time of the plaintiff's discovery of the fraud."[109] To invoke this tolling, a plaintiff must show the following: (1) "the defendant committed actual fraud"; (2) "the fraud concealed the cause of action from the plaintiff, such that the plaintiff was debarred or deterred from bringing an action"; and (3) "the plaintiff exercised reasonable diligence to discover h[er] cause of action despite h[er] failure to do so within the statute of limitation."[110] "In most cases[,] 'issues concerning a plaintiff's diligence in discovering fraud . . . must be resolved by the trier of fact.'"[111]

Here, Plaintiff Powell alleges that she purchased Paparazzi Products "[a]t various points throughout 2018–20[.]"[112] Plaintiff Powell did not file suit until March 13, 2023.[113] If Plaintiff Powell's claims accrued upon purchasing the products, any products purchased before March 13, 2021 would fall outside the two-year statute of limitations for GFBPA claims, and any products purchased before March 13, 2019 would fall outside the four-year statute of limitations for the remaining claims. Nonetheless, the limitations period may be tolled in circumstances involving fraud. Plaintiff Powell's claims sound in fraud in that they are based on the allegation that Defendant knowingly misrepresented its products as lead- and nickel-free when some of its products in fact contained those metals. The SACAC alleges that consumers lack the ability to ascertain the true contents of Defendant's Products prior to purchase and must rely on Defendant to accurately disclose those contents.[114] Assuming the truth of these allegations and drawing

---

[109] *Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1269 (N.D. Ga. 2024) (citation modified).

[110] *Id*. (quoting *Doe v. Saint Joseph's Cath. Church*, 870 S.E.2d 365, 371 (Ga. 2022)).

[111] *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1306 (N.D. Ga. 2021) (quoting *Cochran Mill Assocs. v. Stephens*, 648 S.E.2d 764, 769 (Ga. Ct. App. 2007)).

[112] ECF No. 94 ¶ 30.

[113] ECF No. 59.

[114] ECF No. 94 ¶ 88.

reasonable inferences in Plaintiff Powell's favor, she has sufficiently alleged fraudulent conduct that concealed the cause of action from her. As for reasonable diligence of discovery, Defendant argues that Plaintiff Powell should have been put on notice when she experienced skin discoloration and rashes. However, Plaintiff Powell does not allege when these reactions occurred, and thus when Plaintiff Powell discovered or should have discovered the alleged fraud remains uncertain. Because the SACAC does not make clear that Plaintiff Powell's claims are time-barred, dismissal of those claims on this basis is presently improper

### 3. *Plaintiff Cave (Kansas)*

Defendant argues that Plaintiff Cave's implied warranty, express warranty, and Kansas Consumer Protection Act ("Kansas CPA") claims are time-barred. Under Kansas law, breach of warranty claims are governed by a four-year statute of limitations.[115] Kansas Statutes Annotated § 84–2–725(2) provides that

> [a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

"A three-year statute of limitations is applicable to K[ansas] CPA claims."[116] "The Kansas Court of Appeals has determined that the statute of limitations under the K[ansas] CPA begins running with the occurrence of the alleged conduct constituting the violation, not the discovery of the

---

[115] Kan. Stat. Ann. § 84-2-725(1); *see Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1086 (D. Kan. 2022) ("A breach of implied warranty of merchantability is governed by a four-year statute of limitations.").

[116] *Marksberry v. FCA US LLC*, 481 F. Supp. 3d 1229, 1235 (D. Kan. 2020).

violations."[117] "The statute of limitations begins to run when the consumer is 'aggrieved.'"[118] According to the Kansas Court of Appeals, "aggrieved" is defined "as the time the plaintiff 'suffered a loss' or when the plaintiff 'paid for and received the object of the consumer transaction.'"[119] "[T]he limitations period starts running when the consumer becomes aggrieved, *even if he or she fails to recognize the harm*."[120]

Plaintiff Cave alleges that she purchased Paparazzi products "[a]t various points throughout 2018 and later[.]"[121] She did not file suit until March 13, 2023.[122] For Plaintiff Cave's breach of warranty claims, claims relating to products purchased and received prior to March 13, 2019, would be time-barred. With respect to Plaintiff Cave's Kansas CPA claim, claims relating to products purchased and received prior to March 13, 2020, would be time-barred. However, while Plaintiff Cave's claims are likely limited, they cannot yet be disposed of in their entirety on this basis. It is not clear from the Complaint when Plaintiff Cave received the products at issue. Additionally, Plaintiff Cave alleges that she purchased Paparazzi products "later" than 2018, and in this way, it is not clear from the Complaint that Plaintiff Cave did not purchase and receive products at issue within the limitations period. As such, the Court lacks the ability to rule with certainty as to what extent Plaintiff Cave's claims are time-barred, and the affirmative defense is thus better left for later stages of these proceedings. Therefore, the Court declines to dismiss Plaintiff Cave's claims on this basis.

---

[117] *Id.* (citation modified) (citing *Campbell v. Hubbard*, 201 P.3d 702, 706 (Kan. Ct. App. 2008)).

[118] *Id.*

[119] *Id.* (quoting *Golden v. Den-Mat Corp.*, 276 P.3d 773, 789 (Kan. Ct. App. 2012)).

[120] *Id.* (citation modified) (emphasis added).

[121] ECF No. 94 ¶ 17.

[122] ECF No. 59.

### 4.    *Plaintiff Clark (New York)*

Defendant argues that most of Plaintiff Clark's claims are time-barred. In New York, the statute of limitations for claims based in fraud[123] is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."[124] The New York Uniform Commercial Code establishes a four-year statute of limitations for breach of warranty claims.[125] For these claims, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made[.]"[126] "Claims under Sections 349 and 350 of New York's General Business Law ['GBL'] have a three-year statute of limitations that begins to run 'when plaintiff has been injured by a deceptive act or practice.'"[127]

Plaintiff Clark alleges that "[a]t various points between 2016 and 2018, [she] purchased Paparazzi Products[.]"[128] She did not file suit until March 13, 2023.[129] First addressing Plaintiff Clark's fraud-based claims, if the six-year limitation applies, claims relating to products purchased before March 13, 2017, would be time-barred. However, it is possible that the two-year discovery rule might apply, and it is unclear exactly when Plaintiff Clark discovered or

---

[123] The Court notes that Plaintiff Clark and the putative New York class do not assert a claim for negligent misrepresentation. ECF No. 94 at 56.

[124] *Austin v. Fordham Univ.*, No. 21-cv-6421 (JPO), 2022 WL 4626485, at *7 (S.D.N.Y. Sept. 30, 2022) (alteration in original) (citing N.Y. C.P.L.R. § 213(8)); *see St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 186 (E.D.N.Y. 2010) ("The fraud discovery accrual rule applies to any claim that is predicated on an allegation of actual fraud.").

[125] *See* N.Y. U.C.C. § 2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.").

[126] *Id.* § 2-725(2).

[127] *Nachman v. Tesla, Inc.*, No. 22-cv-5976 (RPK) (ST), 2023 WL 6385772, at *3 (E.D.N.Y. Sept. 30, 2023) (quoting *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078, 1083 (N.Y. 2001)).

[128] ECF No. 94 ¶ 18.

[129] ECF No. 59.

could have discovered the alleged fraud. It is, for example, unclear when Plaintiff Clark experienced the physical symptoms that Defendant claims put Plaintiff Clark on inquiry notice. Thus, the SACAC does not make clear that Plaintiff Clark's fraud-based claims are time-barred, and the Court will not dismiss the claims on this basis.

Plaintiff Clark's purchases clearly fall outside the limitations periods for her breach of warranty and GBL claims. For Plaintiff Clark's breach of warranty claims, claims relating to products purchased prior to March 13, 2019, would be time-barred. And for Plaintiff Clark's claims under sections 349 and 350 of the GBL, claims relating to products purchased prior to March 13, 2020 would be time-barred. And based on Plaintiff Clark's allegations, all of her purchases occurred prior to 2019.

Nonetheless, Plaintiff argues that she is entitled to equitable tolling. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'"[130] "'Due diligence on the part of the plaintiff in bringing [an] action,' however, is an essential element of equitable relief."[131] "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational."[132]

Here, the SACAC alleges that Defendant repeatedly advertised its products as lead- and nickel-free until around late 2021, as well as that consumers lack the ability to ascertain the true contents of the products prior to purchase. Although Defendant claims Plaintiff Clark's physical

---

[130] *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (N.Y. App. Div. 2005)).
[131] *Id*. (alterations in original) (quoting *Holy See*, 793 N.Y.S.2d 565 at 569).
[132] *Id*. (citation modified).

reaction should have put her on notice, it is not clear when this reaction occurred. Plaintiff Clark was possibly put on notice when Defendant released a statement on December 22, 2021, that its jewelry may contain trace amounts of lead and nickel.[133] Plaintiff then filed her suit about fifteen months from this date. But Defendants do not offer any argument that this was not diligent.

Overall, the uncertainty here highlights that, "[g]enerally, the issue of whether a defendant should be equitably estopped from asserting the Statute of Limitations as an affirmative defense to the plaintiff's complaint is not a question of law, but rather a question of fact, which should be fully developed and determined upon the trial of the action."[134] The SACAC does not make clear that Plaintiff Clark's breach of warranty and GBL claims could not be subject to equitable tolling. Thus, the Court declines at this time to dismiss these claims on this basis.

## C.    Fraudulent Misrepresentation

Plaintiffs' claims for fraudulent misrepresentation are subject to Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Usually, "a complaint stating the 'who, what, where, when, and how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b)."[135] The Court "must ask whether the complaint, taken as a whole, 'sufficiently apprise[s]' the defendant of its involvement in the alleged fraudulent conduct."[136]

---

[133] ECF No. 94 ¶ 107.
[134] *St. John's Univ.*, 757 F. Supp. 2d at 187.
[135] *Clinton*, 63 F.4th at 1277.
[136] *Id*. (alterations in original) (quoting *George*, 833 F.3d at 1257).

The Court acknowledges that Plaintiffs have made efforts to satisfy Rule 9(b), and the Court finds that they have sufficiently articulated with particularity the "what" and the "how"[137] of their fraudulent misrepresentation claims: the "what" being that Paparazzi jewelry is lead- and nickel-free and the "how" being through verbal and written advertising, of which Plaintiffs have included examples.[138] However, the Court finds that the SACAC, taken as a whole, does not comport with Rule 9(b).

Beginning with the "where," the SACAC does include details about where several Plaintiffs heard or saw the alleged misrepresentations, such as on Defendant's website, Facebook Live sessions, Facebook advertisements, consultants' social media, and consultants' personal websites, as well as at in-person Pop-Up events, online demonstrations, jewelry shows, and Defendant's in-person sales events.[139] But these details are not given for other Plaintiffs.[140] For example, several Plaintiffs claim to have heard the alleged misrepresentations from consultants but fail to give any indication of where these interactions occurred (i.e., in person at an event or on the phone).[141] Plaintiff Jurgenson does not allege anything with regard to where she saw or heard the alleged misrepresentations.[142]

As for the "who," Plaintiffs argue that Defendant is the who. But while statements from others may be allegedly attributable to Defendant, this is too general given that Plaintiffs' other allegations indicate that the alleged misrepresentations were not always directly from Defendant

---

[137] Defendant argues the "how" in terms of the alleged misrepresentations' consequences, but the Court understands the "how" to be meant to capture "what mediums[] the misrepresentations were communicated ('written and oral')." *Hardy v. Flood*, No. 17-cv-00677-CMA-MJW, 2018 WL 1035085, at *4 (D. Colo. Feb. 23, 2018).

[138] ECF No. 94 ¶ 5.

[139] *See id.* ¶¶ 13–14, 16–19, 21–22, 28–29, 33.

[140] *See id.* ¶¶ 20, 23–24, 26, 30–31.

[141] *See id.* ¶¶ 20, 23–24, 30–31.

[142] *See id.* ¶ 26.

itself. Of course, for advertisements seen on Defendant's website and at Defendant's in-person sales events, Defendant could be the who. But other "wheres" lack a clear "who." For instance, who hosted the Facebook Live sessions? Who was communicating with Plaintiffs at online demonstrations and jewelry shows? Some consultants are specifically named, but others are vaguely referred to as consultants. For example, Plaintiff Langston alleges she saw the representations on consultants' social media and personal websites.[143] Yet Plaintiff Langston would be in the better position to know exactly whose social media accounts and personal websites she was browsing—how Defendant could determine what websites these are from the allegations is difficult to imagine. Plaintiff Smiley alleges that she saw the representations in an email.[144] Who was the sender of this email? Overall, although Plaintiff argues that all alleged misrepresentations are attributable to Defendant, without greater detail on who was involved here, Defendant cannot sufficiently apprise itself of the extent of its involvement

The "when" is, at present, also too general. Plaintiffs claim that the alleged misrepresentations were made continuously throughout the applicable Class period. However, none of the Plaintiffs provide sufficient details about when they saw or heard the alleged misrepresentations. And the span of "the applicable Class period" is not entirely clear to the Court. Plaintiff Morgan, for example, alleges that she purchased Paparazzi Products as early as 2013, but there are no allegations as to when she saw the advertisements.[145] It is possible she could have seen them prior to 2013. Certainly, Plaintiffs need not allege the "when" down to the exact second the advertisement was seen, but they do need to give Defendant sufficient notice of what span of years is truly at issue here.

---

[143] *Id.* ¶ 28.
[144] *Id.* ¶ 33.
[145] *Id.* ¶ 29.

In sum, Plaintiffs have failed to plead their fraudulent misrepresentation claims with sufficient particularity as required under Rule 9(b). The Court thus dismisses these claims without prejudice and with leave to amend.[146]

## D.        Negligent Misrepresentation

The Plaintiffs situated in Alabama, California, Florida, Georgia, Kansas, Kentucky, Michigan, and Washington assert negligent misrepresentation claims against Defendant. Defendant argues that, as with the fraudulent misrepresentation claims, Plaintiffs have failed to plead these claims with sufficient particularity as required under Rule 9(b).

Whether a negligent misrepresentation claim is subject to Rule 9(b) can be a complicated question that depends on how the claim is interpreted under state law. However, Plaintiffs do not dispute that these claims are subject to Rule 9(b), and the claims have the same factual basis as the fraudulent misrepresentation claims—that Defendant intentionally advertised its products as being lead- and nickel-free when some were not. Moreover, upon reviewing the relevant state law,[147] the Court is satisfied that Plaintiffs' negligent misrepresentation claims are grounded in

---

[146] The Court notes that Defendant argues that the fraudulent misrepresentation claims of Plaintiffs Campbell (Florida), Baird (Kentucky), and Covington (Missouri) are barred by the economic loss doctrine. "[W]hether the economic loss doctrine bars Plaintiffs' fraudulent [misrepresentation] claims is an especially complex issue with seemingly persuasive authority on both sides and with potentially different applications of the doctrine under the laws of different states." *Cunningham v. Ford Motor Co.*, 641 F. Supp. 3d 400, 414 (E.D. Mich. 2022). Given the page constraints of the Motion to Dismiss, the parties' briefing on this issue is extremely limited and fails to adequately address the nuances of each state. Thus, at this time, the Court declines to premise its ruling for dismissal on this basis. Defendant may, if applicable, raise the issue again at a later point.

[147] *See, e.g., Surface Art, Inc. v. Tesserae Techs., LLC*, No. 2:24-cv-00924-TL, 2025 WL 1267433, at *10 (W.D. Wash. May 1, 2025) ("Plaintiff's negligent-misrepresentation claim as alleged against Defendant Tesserae fails because, as pleaded, it does not meet the heightened pleading standard of Rule 9(b)."); *Teal v. Argon Med. Devices, Inc.*, 533 F. Supp. 3d 535, 546 (E.D. Mich. 2021) ("[T]he Court finds Plaintiff's argument that she need not plead her negligent misrepresentation claim with particularly as required by Rule 9(b) unavailing."); *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 235 (Ala. 2014) ("A negligent misrepresentation

fraud such that they are subject to the heightened pleading standard of Rule 9(b).

Again, the negligent misrepresentation claims are based on the same factual allegations as the fraudulent misrepresentation claims. Thus, these claims fail for the same reasons that the Court laid out above. The "where," "who," and "when" remain too general, and Plaintiffs have thus failed to articulate the alleged fraud with sufficient particularity as required under Rule 9(b). The Court therefore dismisses the negligent misrepresentation claims without prejudice and with leave to amend.[148]

---

constitutes legal fraud."); *Holland v. Ethicon, Inc.*, No. 2:19-cv-787-WKW, 2021 WL 3432833, at *2 (M.D. Ala. Aug. 5, 2021) ("Plaintiffs' negligent misrepresentation claim sounds in fraud under Alabama law. . . .Thus, the claim is subject to Rule 9(b)'s heightened pleading requirements."); *Linville v. Ginn Real Est. Co.*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation 'sounds in fraud.'"); *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012) (analyzing Kentucky law, "we believe that Republic's negligent-misrepresentation claims, like the rest of its allegations, must satisfy Rule 9(b)'s heightened pleading standard to survive dismissal."); *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007) ("[T]here is ample support for the application of Rule 9(b) to actions other than common law fraud."); *D&K Ventures, LLC v. MGC, LLC*, No. 09-2084-JWL, 2009 WL 1505539, at *8 (D. Kan. May 27, 2009) (dismissing negligent misrepresentation claims based on the same factual allegations as the fraud claim because "in amending those factual allegations as they support the fraud claim, in order to comply with Rule 9(b), plaintiff will necessarily elaborate on the bases for his negligent misrepresentation claim as well."); *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) "(The Court agrees with the line of cases that hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b)."); *C&C Fam. Tr. 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.*, 44 F. Supp. 3d 1247, 1253 n.4 (N.D. Ga. 2014) (assuming Rule 9(b) applied to negligent misrepresentation claim where plaintiff did not challenge the contention).

[148] Defendant also argues that several of these claims are barred by the economic loss doctrine. As with the fraudulent misrepresentation claims, whether the economic loss doctrine bars the negligent misrepresentation claims is a complicated issue "with potentially different applications of the doctrine under the laws of different states." *Cunningham*, 641 F. Supp. 3d at 414. This issue warrants more expansive briefing than what the parties have provided here. Thus, at this time, the Court declines to premise its ruling for dismissal on this basis. Furthermore, because the Court dismisses the negligent misrepresentation claims for failure to comply with Rule 9(b), the Court need not reach Defendant's other arguments concerning Plaintiffs' failure to state a claim. Defendant may, if applicable, raise these issues again at a later point.

E.      **Unjust Enrichment**

Defendant also seeks dismissal of Plaintiffs' unjust enrichment claims due to Plaintiffs'

failure to comply with Rule 9(b). As with the negligent representation claims, whether Rule 9(b)

applies to claims for unjust enrichment is complicated. However, Plaintiff does not dispute that

the claims are subject to Rule 9(b), and the claims are premised on the same factual allegations

as the fraudulent misrepresentation claims. Thus, the Court finds that Plaintiffs' unjust

enrichment claims are subject to Rule 9(b).[149] As such, these claims fail for the same reasons that

---

[149] *See Kaplan v. Gen. Elec. Co.*, No. 2:22-cv-05296 (BRM) (ESK), 2023 WL 4288157, at *9 (D.N.J. June 30, 2023) ("Unjust enrichment claims premised on fraud must plead the underlying fraud with the 'particularity' required by Rule 9(b)."); *Hassan v. Lenovo, Inc.*, No. 5:18-cv-105-BO, 2019 WL 123002, at *3 (E.D.N.C. Jan. 7, 2019) ("Plaintiff's first cause of action, unjust enrichment, sounds in fraud and must therefore comply with the requirements of Federal Rule of Civil Procedure 9(b)."); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-01479-KOB, 2020 WL 2309874, at *14 (N.D. Ala. May 8, 2020) ("It appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) . . . if it is premised on fraud."); *In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *9–10 (N.D. Cal. Jan. 4, 2018) ("[B]ecause the unjust enrichment/quasi-contract claim is based on the same allegedly misleading advertisements upon which Plaintiffs' UCL, FAL, and CLRA claims are based, . . . the unjust enrichment . . . claim also sounds in fraud and is subject to Rule 9(b)'s heightened pleading requirements."); *Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1307 n.11 (11th Cir. 2022) (analyzing Florida law, "[b]ecause Omnipol and Elmex's claims of civil theft and unjust enrichment 'sound in fraud,' they are subject to Rule 9(b)'s requirements."); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) ("When an unjust enrichment claim 'sounds in fraud,' Rule 9(b)'s particularity requirement applies."); *Ferrie v. Woodford Rsch., LLC*, No. 3:19-cv-05798-RBL, 2020 WL 3971343, at *13 (W.D. Wash. July 14, 2020) ("The Court agrees that Ferrie's unjust enrichment claim depends on his allegations of intentional concealment of information to establish unjust circumstances; Rule 9(b) therefore applies."); *Thompson*, 505 F. Supp. 2d at 932 ("Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."); *U.S. ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210-72, 2013 WL 5816501, at *3 (S.D. Ga. Oct. 29, 2013) ("Here, because allegations of fraud underlie the unjust enrichment claim, the Court will apply the heightened pleading standard of Rule 9(b)."); *Kennedy v. Prime Hydration, LLC*, No. 3:23-cv-00476-GNS, 2024 WL 3826529, at *2 n.2 (W.D. Ky. Aug. 14, 2024) ("Presumably, Plaintiffs bring [their unjust enrichment claims] under Kentucky law . . . which subjects them to the Rule 9(b) pleading standard based on Sixth Circuit precedent."); *Brege v. Lakes Shipping Co.*, 225 F.R.D. 546, 549 (E.D. Mich. 2004) ("It plainly appears that the defendants indeed are relying on an unjust enrichment theory against the

the fraudulent and negligent misrepresentation claims fail—Plaintiff has failed to sufficiently articulate with particularity the alleged fraud as required under Rule 9(b). The Court thus dismisses the unjust enrichment claims without prejudice and with leave to amend.[150]

**F.      Statutory Claims**

    *1.        Alabama Deceptive Trade Practices Act ("ADTPA")*

Under the ADTPA, a merchant is liable when "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have[.]"[151] "[C]laims under the ADTPA are based in fraud and thus must comply with Rule 9(b)'s particularity in pleading requirement."[152] The ADTPA claim is premised on the same factual allegations as the fraudulent misrepresentation claim, and as has been discussed, the SACAC has failed to sufficiently articulate the "where," "who," and "when" of the alleged fraud. Thus, because the requirements of Rule 9(b) have not been satisfied, the SACAC has not stated a claim for violation of the ADTPA against Defendant. The Court will dismiss this claim without prejudice and with leave to amend.

---

plaintiff, and that they have pleaded the requisite elements of such a claim, but that does not exempt them from Rule 9(b)'s requirements."); *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) ("Hennessey's unjust enrichment claim is grounded in the same factual allegations [of fraud] and likewise is subject to Rule 9(b)."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) ("A complaint must satisfy the particularity requirement of Rule 9(b) . . . where the alleged unjust enrichment is premised on fraudulent acts.").

[150] Because the Court dismisses the unjust enrichment claims for Plaintiffs' failure to comply with Rule 9(b), it need not reach at this time Defendant's arguments concerning whether unjust enrichment requires a direct benefit, an issue that appears deeply divided under many of the relevant state's laws.

[151] Ala. Code § 8–19–5(5).

[152] *Felton v. Vroom Auto., LLC*, No. 2:25-cv-00580-RDP, 2025 WL 3025686, at *8 (N.D. Ala. Oct. 29, 2025) (citing *Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1036 (N.D. Ala. 2022)).

2.      *California Consumer Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), & California False Advertising Law ("FAL")*

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer."[153] The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s][,]" as well as "unfair, deceptive, untrue or misleading advertising."[154] The "FAL makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'"[155] Here, the CLRA, UCL, and FAL claims are premised on the same factual allegations as the fraudulent misrepresentation claims—that Defendant intentionally misrepresented its products as lead- and nickel-free when some were not. Therefore, as the "CLRA, FAL, and UCL causes of action are all grounded in fraud," the SACAC "must satisfy the . . . heightened pleading requirements of Rule 9(b)."[156] Plaintiffs have failed to sufficiently satisfy Rule 9(b) for the reasons the Court has set forth with respect to the fraudulent misrepresentation claims. The Court thus dismisses the CLRA, UCL, and FAL claims without prejudice and with leave to amend.

3.      *Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")*

"Rule 9(b)'s particularity requirement applies to FDUTPA claims when those claims sound in fraud."[157] Whether a claim sounds in fraud is determined "by comparing a plaintiff's

---

[153] Cal. Civ. Code § 1770.
[154] Cal. Bus. & Prof. Code § 17200.
[155] *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1131 (N.D. Cal. 2013) (quoting Cal. Bus. & Prof. Code § 17500).
[156] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).
[157] *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292 (11th Cir. 2025).

allegations to the elements of common law fraud."[158] Relevant to Florida, the Eleventh Circuit has stated that

> "all agree" that [fraud] encompasses the following: [a] false representation of a material fact made by one who knew that it was false . . ., made to one who did not know that it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage."[159]

Here, the FDUTPA claim is premised on the same factual allegations as the fraudulent misrepresentation claims—that Defendant knowingly misrepresented its products as lead- and nickel-free and that Plaintiffs relied on these representations in making their purchases. Thus, the FDUPTA claim sounds in fraud and must comport with Rule 9(b)'s heightened pleading standard. However, the SACAC has failed to sufficiently articulate the "where," "who," and "when" of the alleged fraud. As such, the FDUPTA claim fails. Accordingly, the Court dismisses the FDUPTA claim without prejudice and with leave to amend.[160]

### 4.    Georgia Fair Business Practices Act ("FBPA")

"A private [Georgia] FBPA claim has three elements: a violation of the Act, causation, and injury."[161] "A violation of the Georgia . . . [FBPA] is a fraud-based offense."[162] Claims under the FBPA based in fraud must thus be plead with particularity pursuant to Rule 9(b).[163] Here, the FBPA claim is premised on the same allegations as the other fraud-based claims, and the FBPA claim thus fails to comply with Rule 9(b) for the same reasons that the other fraud-

---

[158] *Pop*, 145 F.4th at 1294.

[159] *Id*. at 1294–95 (quoting *United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir. 2019) (W. Pryor, C.J., concurring)).

[160] Because the Court dismisses the FDUPTA claim for failure to comply with Rule 9(b), the Court need not reach Defendant's argument that Plaintiffs have failed to sufficiently state damages under the FDUPTA.

[161] *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006) (citation modified).

[162] *Nalley v. Gen. Motors LLC*, No. 1:21-cv-04174-WMR, 2022 WL 18459646, at *7 (N.D. Ga. Aug. 30, 2022).

[163] *See id*.

based claims fail to do so. Therefore, the Court will dismiss the FBPA claim without prejudice and with leave to amend.

### 5.     *Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA")*

"The ICFA makes it unlawful to use deception or fraud in the conduct of trade or commerce."[164] "In addition to its general proscriptions, the act provides a right of action for a person who suffers 'actual damage' as a result of a violation."[165] "When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies."[166] Here, the ICFA claim is premised on the same allegations as the fraudulent misrepresentation claims—that Defendant intentionally and maliciously misrepresented its products as lead- and nickel-free despite that some products did in fact contain these metals—and the ICFA claim must therefore comply with Rule 9(b). However, as with the other fraud-based claims, Plaintiffs have failed to articulate with sufficient particularity the "where," "who," and "when" of the alleged fraud. The SACAC has thus failed to state a claim for relief under the ICFA, and the Court will dismiss the IFCA claim without prejudice and with leave to amend.

### 6.     *Kansas Consumer Protection Act ("Kansas CPA")*

"The K[ansas] CPA provides that an aggrieved consumer may maintain a private right of action against a supplier if: (1) the supplier willfully failed to state a material fact; or (2) the supplier willfully failed to state, concealed, suppressed, or omitted a material fact."[167] "[A]n allegation of deceptive practices under the K[ansas] CPA must set forth the time, place, and

---

[164] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).
[165] *Id.*
[166] *Id.*
[167] *Marksberry*, 481 F. Supp. 3d at 1235 (citation modified).

contents of the false representation, the identity of the party making the false statements and the consequences thereof."[168] In other words, Kansas CPA claims alleging deceptive trade practices are subject to Rule 9(b).[169] Here, the SACAC alleges that Defendant acted deceptively in holding its products out as lead- and nickel-free when some products in fact contained those metals. However, as has been discussed, the SACAC has failed to state with sufficient particularity the "where," "who," and "when" of the alleged fraud. Accordingly, the Kansas CPA claim fails, and the Court will dismiss the claim without prejudice and with leave to amend.

       7.       *Kentucky Consumer Protection Act ("Kentucky CPA")*

"The K[entucky] CPA was enacted 'to give Kentucky consumers the broadest possible protection for allegedly illegal acts.'"[170] The Act prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce[.]"[171] "To that end, the K[entucky] CPA provides a private right of action for any person who (1) purchases or leases goods or services (2) for personal, family or household purposes and (3) is injured as a result of a seller's prohibited practice or act."[172]

Rule 9(b)'s heightened pleading standard applies to Kentucky CPA claims.[173] Thus, the Kentucky CPA claim fails for the same reasons that the other fraud-based claims fail—Plaintiffs have failed to articulate with sufficient particularity the "where," "who," and "when" of the alleged fraud.

---

[168] *Id*. at 1236.

[169] *See id*.

[170] *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 961 (E.D. Ky. 2019) (quoting *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988)).

[171] Ky. Rev. Stat. Ann. § 367.170.

[172] *Simpson*, 397 F. Supp. 3d at 961 (citing Ky. Rev. Stat. Ann. § 367.220(1)).

[173] *See Kempf v. Lumber Liquidators, Inc.*, No. 3:16-cv-492-DJH, 2017 WL 4288903, at *5 (W.D. Ky. Sept. 27, 2017).

The Kentucky CPA claims, however, suffer from an additional flaw. "An action under the K[entucky] CPA requires privity of contract between the parties."[174] In *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907 (Ky. Ct. App. 1992), the "seminal Kentucky case interpreting the scope of KRS § 367.220[,]"[175] the court concluded that

> a subsequent purchaser may not maintain an action against a seller with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser. *The language of the statute plainly contemplates an action by a purchaser against his immediate seller . . . The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.* We find distinguishable situations such as that presented in *Ford Motor Co. v. Mayes*, Ky. App., 575 S.W.2d 480 (1978), where the defendant (Ford Motor Company) provides warranties to the ultimate purchaser to repair the item purchased.[176]

"[O]ne district court, *Naiser v. Unilever United States, Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013), broke ranks in 2013."[177] "*Naiser* interpreted the last sentence of the above excerpt from *Skilcraft* and held that a plaintiff may also bring a K[entucky] CPA claim where a defendant has 'made valid express warranties for Plaintiffs' benefit.'"[178] Plaintiffs urge the Court to apply the purported exception recognized in *Naiser*. *Naiser* appears, however, to "overextend[] the intent of the Kentucky legislature and the holding in *Skilcraft*"[179] and to be "an outlier."[180] As stated in *Simpson*, "nothing suggests that the Kentucky Supreme Court would apply any rule other than that which is stated in *Skilcraft*."[181] "[N]umerous Kentucky Courts of Appeals have cited *Skilcraft* and interpreted the text of the K[entucky] CPA to mean that an individual must be a

---

[174] *Simpson*, 397 F. Supp. 3d at 961.
[175] *Id*. at 962.
[176] *Skilcraft*, 836 S.W.2d at 909 (emphasis added).
[177] *Simpson*, 397 F. Supp. 3d at 962.
[178] *Id*. (quoting *Naiser*, 975 F. Supp. 2d at 743).
[179] *Id*.
[180] *Id*. at 963.
[181] *Id*. at 962.

purchaser with privity of contract in order to have standing to bring an action under the [Kentucky CPA.]"[182] And "[t]he Sixth Circuit and the majority of the federal district courts have also followed suit in holding that privity is required under the K[entucky] CPA."[183] Thus, it seems to the Court that the weight of the authority favors requiring privity, without exception, for Kentucky CPA claims.

Here, the SACAC fails to allege from whom Plaintiff Baird, the Kentucky Plaintiff, purchased her Paparazzi products. While the SACAC does allege that Defendant is a "multi-level marketing business that . . . sells jewelry and other accessories to consultants across the United States, who then sell the jewelry and other accessories to consumers"[184] and that consultants are "third parties[,]"[185] it is unclear whether a consumer could purchase a product directly from Defendant. And it remains possible that Plaintiff Baird purchased her products second-hand from another consumer. Thus, Plaintiff Baird has failed to sufficiently allege that this involves "an action by a purchaser against his immediate seller"[186] as required under the Kentucky CPA.

Therefore, the Kentucky CPA claim fails to comply with Rule 9(b) and fails to sufficiently allege that privity exists. The Court will dismiss the claim without prejudice and with leave to amend.

### 8. Michigan Consumer Protection Act ("MCPA")

Federal Rule of Civil Procedure 9(b) applies to MCPA claims based on fraud.[187] Here, the SACAC, as with the other fraud-based claims, alleges that Defendant "falsely . . . represented

---

[182] *Id*. at 962–63 (citation modified) (collecting cases).
[183] *Id*. at 963.
[184] ECF No. 94 ¶ 3.
[185] *Id*. ¶ 4.
[186] *Simpson*, 397 F. Supp. 3d at 963.
[187] *In re Packaged Ice,* 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011).

the material information intentionally, knowingly, willfully, wantonly, and with reckless disregard for the truth."[188] As this claim is thus based on fraud, the requirements of Rule 9(b) apply. Plaintiffs have, as discussed, failed to articulate with sufficient particularity the "where," "who," and "when" of the alleged fraud. Accordingly, the MCPA claim fails, and the Court will dismiss the claim without prejudice and with leave to amend.

> 9.      *Missouri Merchandising Practices Act ("MMPA")*

"The MMPA declares unlawful '[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.'"[189] "Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard."[190] Here, the SACAC alleges that Defendant deceptively advertised its products as lead- and nickel-free when some of those products in fact contained lead and nickel; thus, the MMPA claim sounds in fraud and is subject to the requirements of Rule 9(b). Because, as with the other fraud-based claims, Plaintiffs have failed to satisfy Rule 9(b) by not sufficiently stating with particularity the "where," "who," and "when" of the alleged fraud, the MMPA claim fails. Thus, the Court will dismiss the MMPA claim without prejudice and with leave to amend.

---

[188] ECF No. 94 ¶ 351.
[189] *Hennessey*, 86 F.4th at 827 (8th Cir. 2023) (quoting Mo. Rev. Stat. § 407.020(1)).
[190] *Id*.

10.     *New Jersey Consumer Fraud Act ("NJCFA")*

"To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff."[191] The NJCFA defines "unlawful practice" as

> [t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise[.][192]

NJCFA claims are subject to the heightened pleading requirements of Rule 9(b).[193] Here, the NJCFA claim is premised on the same factual allegations as the other fraud-based claims. Therefore, the NJCFA claim fails to comport with Rule 9(b) for the same reasons that the other claims fail to do so. Accordingly, the Court dismisses the NJCFA claim without prejudice and with leave to amend.[194]

11.     *New York General Business Law ("GBL") §§ 349, 350*

"GBL section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"[195] "GBL section 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'"[196] "To assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

---

[191] *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).
[192] N.J. Stat. Ann. § 56:8–2.
[193] *Frederico*, 507 F.3d at 203.
[194] Because the Court dismisses the NJCFA claims for failure to comply with Rule 9(b), the Court need not reach Defendant's argument that Plaintiffs have failed to sufficiently state damages under the NJCFA.
[195] *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) (N.Y. Gen. Bus. Law § 349).
[196] *Id*. (quoting N.Y. Gen. Bus. Law § 350).

misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"[197]

Notably, unlike many other state consumer protection statutes, "[c]laims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)."[198] As such, the claims need only comply with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Here, Plaintiffs Hollins and Clark allege that Defendant falsely advertised to consumers that its products were lead- and nickel-free when some of those products in fact were not. Plaintiffs further allege that they relied on these representations in purchasing the products and that they then paid for a benefit—lead- and nickel-free accessories—that they did not receive.[199] They also allege that they would not have purchased or would have paid less for the products if they had known the truth.[200] Assuming the truth of these allegations, the Court finds that Plaintiffs Hollins and Clark have sufficiently stated claims for relief under GBL sections 349 and 350. Dismissal of these claims is thus improper, and Defendant's Motion is denied with respect to these claims.

12. *North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")*

Pursuant to the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."[201] "Fraud may support a UDTPA claim[,]" though a UDTPA claim may also "sound more broadly than

---

[197] *Id*. (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).
[198] *Id*.
[199] ECF No. 94 ¶¶ 18, 22.
[200] *Id.*
[201] N.C. Gen. Stat. § 75–1.1(a).

fraud."[202] Rule 9(b)'s requirements apply when the UDTPA claim sounds in fraud.[203] Here, the UDTPA claim is premised on the same allegations of fraud as the other fraud-based claims. Rule 9(b)'s requirements thus apply. Accordingly, as Plaintiffs have failed to plead the alleged fraud with sufficient particularity as required by Rule 9(b), the UDTPA claim fails. The Court will dismiss the UDTPA claim without prejudice and with leave to amend.

13.     *Washington Consumer Protection Act ("WCPA")*

To plead a claim under the WCPA, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."[204] "Rule 9(b) applies to WCPA claims when they allege a specific intent to deceive or a unified fraudulent course of conduct."[205] Here, the WCPA claim is premised on the factual allegations that Defendant intentionally deceived consumers by representing its products as lead- and nickel-free when some of the products were not in fact free from those metals. The SACAC thus alleges a specific intent to deceive, and Rule 9(b) applies to the WCPA claim. The WCPA claim, however, fails to satisfy Rule 9(b) for the same reasons that Plaintiffs' other fraud-based claims fail to do so. The Court therefore dismisses the WCPA claim without prejudice and with leave to amend.

## G.     Breach of Express Warranty

Plaintiffs Anderson (Alabama), Dornaus, Jackson, Rodriguez, Smiley (California), Campbell (Florida), Powell (Georgia), Huskey (Illinois), Cave (Kansas), Covington (Missouri),

---

[202] *Burn v. Lend Lease Pub. P'ships LLC*, No. 7:20-cv-174-D, 2021 WL 4164685, at *8 (E.D.N.C. Sept. 13, 2021).
[203] *See Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020).
[204] *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).
[205] *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1037 (W.D. Wash. 2025) (citation modified).

Morgan (New Jersey), Langston (North Carolina), and Jurgensen (Washington) assert claims for breach of express warranty against Defendant.[206] Defendant argues that Plaintiffs Campbell and Huskey's claims fail to satisfy state-specific privity requirements. As Defendant does not challenge Plaintiffs Anderson, Dornaus, Jackson, Rodriguez, Smiley, Powell, Cave, Convington, Morgan, Langston, and Jurgenson's claims on lack-of-privity grounds, the Court denies Defendant's Motion with respect to these claims, and these claims remain. The Court will address the claims of Plaintiffs Campbell and Huskey in turn.

      1.      *Plaintiff Campbell (Florida)*

Whether privity is required for express warranty claims under Florida law appears somewhat unsettled. "While privity is generally necessary for breach of express warranty claims," in cases involving the Magnuson-Moss Warranty Act ("MMWA"), "courts have relaxed this requirement where the express warranty was clearly intended to cover subsequent purchasers."[207] Nonetheless, "[p]rivity is . . . required for actions premised on express warranties under Florida's UCC."[208] Here, Plaintiff Campbell has not brought her breach of express warranty claim pursuant to the MMWA; rather, the Complaint references the "State U.C.C. provisions."[209] Thus, the Court is not convinced that any relaxed privity standard that may be applicable under the MMWA is applicable here where Plaintiff Campbell has brought her express warranty claim pursuant to Florida's UCC. As such, Plaintiff Campbell must plausibly

---

[206] The Court notes that Plaintiffs Burgess (California), Johnson, Kebort, Williams (North Carolina), and Sidbury (Virginia) also asserted claims for breach of express warranty. However, the Court found that these Plaintiffs lack standing and dismissed all of these Plaintiffs' claims without prejudice. Thus, to the extent the Court discusses claims that survive dismissal in this section, it does not include the claims from these Plaintiffs.

[207] *Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013).

[208] *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007).

[209] ECF No. 94 ¶ 192.

allege that she was in privity of contract with Defendant. Plaintiff Campbell has failed to do so, as the Complaint does not allege from whom Plaintiff Campbell purchased the products.[210] The Court therefore dismisses Plaintiff Campbell's breach of express warranty claim without prejudice and with leave to amend.

>     2.    *Plaintiff Huskey (Illinois)*

"Under Illinois law, a plaintiff must be in privity of contract with a defendant in order to bring an action for breach of express warranty."[211] There is, however, "an exception to that rule, and express warranty claims are permitted to bypass the privity requirement if a manufacturer 'expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.'"[212]

Here, the SACAC fails to allege from whom Plaintiff Huskey purchased her products,[213] and she has thus failed to sufficiently allege that she is in privity of contract with Defendant. Nonetheless, the SACAC alleges that Defendant itself touted to consumers that all of its products were lead- and nickel-free on its website and that Defendant exerted control over its consultants to market the products as such to consumers. Plaintiff Huskey allegedly heard these representations from a consultant, relied on the representations, and purchased the products on account of the representations.[214] Assuming the truth of these allegations, it appears that Plaintiff Huskey has sufficiently alleged that her claim falls within the exception to the privity requirement under Illinois law. In other words, Plaintiff Huskey has sufficiently alleged that Defendant expressly warranted its goods to the ultimate consumers and that this was the basis for

---

[210] *See id.* ¶ 16.
[211] *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 765 (N.D. Ill. 2022).
[212] *Id.* (quoting *Rosenstern v. Allergan, Inc.*, 987 F.Supp.2d 795, 805 (N.D. Ill. 2013)).
[213] *See* ECF No. 94 ¶ 23.
[214] *Id.*

the bargain and relied upon by Plaintiff Huskey. The Court thus denies Defendant's Motion to Dismiss with respect to Plaintiff Huskey's breach of express warranty claim.

## H.      Breach of Implied Warranty

Plaintiffs Anderson (Alabama), Dornaus, Jackson, Rodriguez, Smiley (California), Campbell (Florida), Powell (Georgia), Cave (Kansas), Gilbert (Michigan), Covington (Missouri), Morgan (New Jersey), Langston (North Carolina), and Jurgensen (Washington) assert claims for breach of express warranty against Defendant.[215] Defendant argues that, of the Plaintiffs who remain, Plaintiffs Dornaus, Jackson, Rodriguez, Smiley, Campbell, Langston, and Jurgensen's claims fail for lack of privity with Defendant.

As Defendant does not challenge Plaintiffs Anderson, Powell, Cave, Gilbert, Covington, and Morgan's claims on lack-of-privity grounds, the Court denies Defendant's Motion with respect to these claims, and these claims remain.

Plaintiff Campbell concedes that her claim presently fails under Florida law.[216] The Court thus dismisses Plaintiff Campbell's breach of implied warranty claim without prejudice.

As for the remaining Plaintiffs, the Court will address each relevant state in turn.

### 1.      California

In California, a plaintiff asserting breach of warranty claims must generally "stand in vertical contractual privity with the defendant."[217] "There are exceptions to this rule when, for example, the plaintiff relies on written labels or advertisements of a manufacturer or the end user

---

[215] Plaintiffs Burgess (California), Johnson, Kebort, Williams (North Carolina), and Sidbury (Virginia) also asserted claims for breach of implied warranty. As noted above, the Court found that these Plaintiffs lack standing and dismissed all of these Plaintiffs' claims without prejudice. Thus, to the extent the Court discusses claims that survive dismissal in this section, it does not include the claims from those Plaintiffs.

[216] ECF No. 107 at 18 n.6.

[217] *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1166 (C.D. Cal. 2023).

is an employee of the purchaser."[218] Neither of these exceptions apply here. The California

Plaintiffs do not allege that they were employees of the purchaser.[219] Furthermore, Plaintiffs

Dornaus, Jackson, and Rodriguez allege that they "heard" the alleged misrepresentations from a

Paparazzi consultant.[220] Plaintiff Smiley alleges that she "saw" the alleged misrepresentations

"in an email" but does not allege who sent this email.[221] Thus, the California Plaintiffs have

failed to plausibly allege that they relied on *written* labels or advertisements of Defendant.

Some courts in the Ninth Circuit have allowed a "third-party beneficiary" exception "to

the privity rule that allows end consumers to assert implied warranty claims against

manufacturers."[222] Under this exception, courts have permitted third-party beneficiaries "to

enforce the terms of a contract made for their benefit."[223] However, there is a split among the

district courts as to whether this exception exists under California law.[224] The Court need not

resolve this split at present because, even assuming such an exception exists, the SACAC fails to

allege facts showing that this exception applies. None of the California Plaintiffs have alleged

from whom they purchased their Paparazzi products.[225] Thus, they have failed to plausibly allege

either that they are in privity with Defendant or a third-party beneficiary to an agreement

between Defendant and a consultant. The Court thus dismisses the California Plaintiffs' breach

of implied warranty claims without prejudice and with leave to amend.

---

[218] *Id*. (citation modified).
[219] *See* ECF No. 94 ¶¶ 20, 24, 31, 33.
[220]  *Id*. ¶¶ 20, 24, 31.
[221] *Id*. ¶ 33.
[222] *Kulp*, 678 F. Supp. 3d at 1166.
[223] *Id*. at 1267.
[224] *Id*. at 1266.
[225] *See* ECF No. 94 ¶¶ 20, 24, 31, 33.

2.      *North Carolina*

"Under North Carolina law, privity of contract is generally required to assert an implied warranty claim."[226] "Although North Carolina has abolished the privity requirement in certain situations, when a plaintiff asserts an implied warranty claim seeking only the recovery of economic loss, North Carolina requires privity of contract."[227] Plaintiff contends that *Kinlaw v. Long* Manufacturing North Carolina, Inc., 259 S.E.2d 552 (N.C. 1979) created an exception to the general rule under which privity is not necessary when "a manufacturer . . . makes representations designed to induce a purchase and directed to the ultimate purchaser."[228] *Kinlaw*, however, was addressing an express warranty,[229] and "[t]he North Carolina Supreme Court . . . has not extended *Kinlaw* to implied warranties."[230] Thus, it does not appear to the Court that *Kinlaw* will save Plaintiff Langston from having to allege privity of contract here. And Plaintiff Langston fails to plausibly allege privity of contract because she does not allege from whom she purchased the products.[231] Accordingly, the Court will dismiss Plaintiff Langston's breach of implied warranty claim without prejudice and with leave to amend.

3.      *Washington*

Under Washington law, "lack of privity has historically been a defense to claims of breach of warranty."[232] Nonetheless, a "vertical nonprivity plaintiff" may be allowed "to recover where the plaintiff was the intended third-party beneficiary of the implied warranty that the

---

[226] *Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 149 (E.D.N.C. 2023).

[227] *Id.* at 150 (collecting cases).

[228] *Kinlaw*, 259 S.E.2d at 556.

[229] *Id.* at 557.

[230] *Kelly v. Georgia-Pac. LLC*, No. 7:08-cv-197-D, 2010 WL 11579013, at *5 (E.D.N.C. Aug. 31, 2010) (collecting cases).

[231] *See* ECF No. 94 ¶ 28.

[232] *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d at 1042.

manufacturer gave to its intermediate dealer."[233] Courts in Washington "apply the 'sum of the interaction' test essentially to determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty."[234] "Plaintiffs can demonstrate they are third-party beneficiaries where a manufacturer knew a purchaser's identity, knew the purchaser's purpose for purchasing the manufacturer's product, knew a purchaser's requirements for the product, delivered the product, and/or attempted repairs of the product in question."[235]

Here, Plaintiff Jurgenson has failed to allege from whom she purchased her Paparazzi products,[236] and she has thus failed to plausibly allege that she is in privity with Defendant. She has also, however, failed to plausibly allege that she is a third-party beneficiary as contemplated under the exception. Although the SACAC alleges that "Paparazzi knows that wearing accessories containing lead and nickel is undesirable to many consumers,"[237] which may speak to Defendant's knowing Plaintiff Jurgenson's purpose and requirements for the products, Plaintiff Jurgenson has not alleged that Defendant knew her identity in particular, delivered the product, or attempted repairs on the product. Accordingly, the Court dismisses Plaintiff Jurgenson's breach of implied warranty claim without prejudice and with leave to amend.

## **ORDER**

For the reasons set forth above, it is hereby ordered that Plaintiff's Motion to File Surresponse (ECF No. 113) is DENIED.

---

[233] *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003).
[234] *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d at 1042–43.
[235] *Id.* at 1043.
[236] *See* ECF No. 94 ¶ 26.
[237] *Id.* ¶ 89.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (ECF No. 99) is GRANTED IN PART AND DENIED IN PART as follows:

1. The claims of Plaintiffs Burgess, Johnson, Kebort, Sidbury, and Williams are dismissed without prejudice in their entirety for lack of subject matter jurisdiction.

2. The claims for fraudulent misrepresentation are dismissed without prejudice.

3. The claims for negligent misrepresentation are dismissed without prejudice.

4. The claims for unjust enrichment are dismissed without prejudice.

5. With the exception of the claims asserted pursuant to New York General Business Law §§ 349 and 350, all the statutory claims of all the states are dismissed without prejudice. The claims asserted pursuant to New York General Business Law §§ 349 and 350 remain.

6. Plaintiff Campbell's breach of express warranty claim is dismissed without prejudice. For the other Plaintiffs who have sufficiently demonstrated standing, the breach of express warranty claims remain.

7. Plaintiff Campbell's breach of implied warranty claim is dismissed without prejudice. The California Plaintiffs' breach of implied warranty claims are dismissed without prejudice. Plaintiff Langston's breach of implied warranty claim is dismissed without prejudice. Plaintiff Jurgenson's breach of implied warranty claim is dismissed without prejudice. For the other Plaintiffs who have sufficiently demonstrated standing, the breach of implied warranty claims remain.

IT IS FURTHER ORDERED that within thirty (30) days of this Order, Plaintiffs may file with the Court a Third Amended Class Action Complaint limited to the claims asserted in the

47

Second Amended Class Action Complaint addressing the issues the Court has discussed in this Order.

DATED this 27th day of March 2026.        BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge